Argued and submitted March 3, decision of the Court of Appeals affirmed, judgment of the district court reversed, and case remanded to the district court for new trial May 6, 1993

STATE OF OREGON,
*Respondent on Review,*

*v.*

LAWRENCE ELLIS TRENARY,
*Petitioner on Review.*

(DC 89CR2991; CA A65385; SC S39615)

850 P2d 356

Dan Maloney, Deputy Public Defender, Salem, argued the cause for petitioner on review. On the petition were Sally L. Avera, Public Defender, and Louis R. Miles, Deputy Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent on review.

PETERSON, J.

## PETERSON, J.

Persons stopped on suspicion of driving under the influence of intoxicants (DUII) often are requested by police officers to perform "field sobriety tests."[1] ORS 813.135 states that, "[b]efore the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests." In this case, the arresting officer asked defendant to perform field sobriety tests but failed to inform defendant of the consequences of refusing. Defendant nonetheless performed the tests. Following the denial of his motion to suppress the test results, he was convicted of DUII in a jury trial. The Court of Appeals upheld the trial court's denial of the motion to suppress but nonetheless reversed, because defendant's right to call a lawyer before taking the test was violated. *State v. Trenary,* 114 Or App 608, 836 P2d 739 (1992).

Defendant seeks review of the denial of his motion to suppress. The issue presented is: Does the failure of the police officer to inform the driver of the consequences of refusing to take the field sobriety tests, as required by statute, require suppression of the test results when the driver takes the tests anyway?[2]

The relevant statutes are ORS 813.135 and 813.136. ORS 813.135 provides:

"Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if

---

[1] ORS 801.272 defines "field sobriety test" as

"a physical or mental test, approved by the Department of State Police by rule after consultation with the Board on Public Safety Standards and Training, that enables a police officer or trier of fact to screen for or detect probable impairment from intoxicating liquor, a controlled substance or a combination of intoxicating liquor and a controlled substance."

The administrative rules for field sobriety tests appear at OAR 257-25-000 *et seq.*

[2] The state has not sought review of the other issue (the remand for denial of the right to call a lawyer), and we express no opinion as to the correctness of that part of the Court of Appeals decision. *But see Gildroy v. MVD,* 315 Or 617, 848 P2d 96 (1993); *State v. Spencer,* 305 Or 59, 750 P2d 147 (1988); and *Moore v. Motor Vehicles Division,* 293 Or 715, 652 P2d 794 (1982), all of which concern the right of an arrested driver suspected of DUII to attempt to talk to a lawyer before taking a breath test.

the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

The statutes are silent as to whether evidence obtained from a person who takes the test without being informed of the consequences of refusal should be suppressed.

■     In construing statutes, our task is to discern the intent of the legislature. ORS 174.020; *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990). In recent years, we have developed a template that we follow in ascertaining legislative intent.

■     We start with the text of the statute, to ascertain "what is * * * contained therein, not to insert what has been omitted, or to omit what has been inserted." ORS 174.010; *Sanders v. Oregon Pacific States Ins. Co.*, 314 Or 521, 527, 840 P2d 87 (1992). When the words of the statute are not dispositive, we look to the statute's context. In considering its context, we may consider other provisions of the same statute and other statutes on the same subject. *Sanders v. Oregon Pacific States Ins. Co., supra*, 314 Or at 527; *see Comeaux v. Water Wonderland Improvement Dist.*, 315 Or 562, 569-70, 847 P2d 841 (1993) (interpreting provision of the Oregon Constitution by looking at its text and context). If the text and context of the statute do not tell us what the legislature intended, we look to the legislative history. *Mattiza v. Foster, supra*, 311 Or at 4.

     The relevant statutes, ORS 813.135 and 813.136, are set forth above. As stated, neither statute — and no other statute — requires suppression of the test results if the police officer fails to inform a person of the consequences of refusal.

In some statutes concerned with police conduct, the legislature expressly has provided the means by which a defendant may seek to exclude evidence obtained in violation of them. *See, e.g.*, ORS 133.735 (unlawfully intercepted communications may be excluded upon a motion to suppress); ORS 136.675 (testimony of person hypnotized in violation of statute is inadmissible). However, the legislature's failure expressly to require exclusion of evidence obtained without complying with ORS 813.135 does not mean that such evidence automatically is admissible.

■ This court has, over time, developed a body of case law specifically concerned with whether suppression is appropriate if the government violates a statute in the criminal code. Violation of a law by law enforcement personnel does not necessarily require suppression. *State v. Valentine/Darroch*, 264 Or 54, 68, 504 P2d 84 (1972). In the absence of a constitutional violation[3] or an express statutory requirement of exclusion, evidence obtained in violation of a statute should be suppressed if the law violated was "designed to protect citizens against unauthorized or illegal [conduct by the government]," *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983), or, otherwise stated, if suppression would effectuate the purpose of the statute, *State v. Porter*, 312 Or 112, 121, 817 P2d 1306 (1991); *State v. Davis, supra*, 295 Or at 236. *See State v. Brock*, 294 Or 15, 22, 653 P2d 543 (1982) (evidence obtained pursuant to a search warrant authorizing nighttime search without showing of special circumstances was admissible because "the state's use of the evidence would [not] vitiate the interest that the statute was intended to protect");[4] *State v. Valentine/Darroch, supra* (evidence obtained in violation of the Oregon "knock and announce" statute was admissible). We turn, therefore, to the text of ORS 813.135 and 813.136 to determine whether the statutes were designed to protect a right of the defendant or, more specifically, to determine whether the laws were "designed to protect

---

[3] Defendant does not contend that admission into evidence of the results of the field sobriety test violated his state or federal constitutional rights.

[4] In *State v. Brock*, 294 Or 15, 22, 653 P2d 543 (1982), the court ruled that, when there is no statutory directive to suppress evidence obtained in violation of a statute, that omission weighs against suppression of the evidence.

citizens against unauthorized or illegal [conduct by the government]." *State v. Davis, supra*, 295 Or at 237.

The first sentence of ORS 813.135 — the "deemed to have given consent" sentence — suggests that the statute was meant to compel all drivers to submit to field sobriety tests on the request of a police officer having reasonable suspicion that the driver was driving under the influence of intoxicants. The purpose of the second sentence of ORS 813.135 is self-evident — to require, before administration of the field sobriety tests, that the driver be informed of the consequences of refusal. The purpose of ORS 813.136 also is self-evident — to make the refusal admissible in evidence if the test is refused. All three sentences of the two statutes suggest that the dominant purpose was compulsion — to compel a person suspected of DUII to perform the tests by (1) implying consent from operation of a vehicle on highways, (2) making the refusal to take the tests admissible if the suspect refuses to take the tests, and (3) requiring that the suspect be informed of the consequences of refusal in order to compel the suspect to take the test.

The only "right" of a defendant that arguably arose from the enactment of ORS 813.135 and 813.136 is the implied right of a person who has *refused* to submit to the tests to have evidence of his or her refusal suppressed if information concerning the consequences of refusal was not given. The main purpose of the second sentence of ORS 813.135 was not to create a right, but to bring further pressure on suspected intoxicated drivers to take the field sobriety tests. The statute aimed to advise drivers who may be disposed *not* to perform the tests that, if they refused, evidence of the refusal would be admissible, provided that they were warned of the consequences of refusal. The statute is directed at drivers who refuse to take the test, not at drivers who do take the test, consistent with their consent already implied.

■     The text of ORS 813.135 and 813.136 compels the conclusion that these statutes were enacted for two overriding reasons: First, to provide that operation of a vehicle was a consent to field sobriety tests (thus providing the foundation for admissibility of evidence of a refusal found lacking in *State v. Green*, 68 Or App 518, 684 P2d 575 (1984)); and, second, to

compel drivers to take field sobriety tests.[5] Evidence of field sobriety tests had long been held admissible in the absence of the statutory consent provisions. *See State v. Donovan*, 305 Or 332, 338, 751 P2d 1109 (1988) (evidence obtained from field sobriety tests admitted at trial); *State v. Roberti*, 293 Or 59, 644 P2d 1104 (1982) (same).

True, ORS 835.135 and 835.136 contain an implied exclusionary clause. The statutes imply that, if the driver *refuses* the tests and no information concerning the consequences of refusing was given, evidence of refusal is not admissible. That implication follows from the provision that makes evidence of the refusal admissible if the driver is informed of the consequences of refusal.

The failure of the legislature to provide for any consequence if a driver takes field sobriety tests without being informed of the consequences of refusal suggests that it intended that no consequence follows because, in that event, the goal of the statute — that suspected DUII drivers perform field sobriety tests — has been achieved. The legal effect — and intended effect — of the legislature's decision is, in essence, "no harm, no foul." The legislature found no prejudice to drivers who take the test without being informed of the consequences of refusal. Therefore, it did not address that contingency in the statute.

■ A driver who takes the test without being informed of the consequences of refusal has not been harmed in any legal sense. When a driver drives a car, he or she impliedly consents to field sobriety tests to determine if the driver is under the influence, upon the request of a police officer who has a reasonable suspicion that the driver is under the influence. In taking the test, the driver is only doing that which he or she has already consented to do.

Neither the purpose of the law nor any right of a defendant is furthered by suppression of the test results in

---

[5] Although we need not resort to legislative history, it confirms our conclusion. *See*, particularly, Minutes, Senate Judiciary Committee (SB 130), April 25, 1989, Tape 134, side B at 370, Exs R, S.; Minutes, Senate Judiciary Committee (SB 130) April 25, 1989, Ex K (testimony of Lane County Assistant District Attorney Frank R. Papagni, Jr.); Minutes, Senate Judiciary Committee (SB 130), April 25, 1989, Ex Q (testimony of Linn County District Court Judge Rick J. McCormick).

situations in which the person is not informed of the consequences of refusal. "[T]he event that triggers the applicability of ORS 813.135 and ORS 813.126 [— the refusal —] never occurred." *State v. Trenary, supra,* 114 Or App at 622 (Edmonds, J., concurring).

The decision of the Court of Appeals is affirmed. The judgment of the district court is reversed, and the case is remanded to the district court for a new trial.