Filed: March 1, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Respondent on Review,

v.

JOSE L. NUNEZ CABANILLA,
aka Jose L. Cabanilla Nunez,

Petitioner on Review.

(CC 08071452C; CA A141868; SC S059289)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 10, 2011.

Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender.

Pamela J. Walsh, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Kevin Diaz, ACLU Foundation of Oregon, Inc., Portland, filed a brief on behalf of *amicus curiae* ACLU Foundation of Oregon, Inc.

DE MUNIZ, C. J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

*Appeal from Malheur County Circuit Court, J. Burdette Pratt, Judge. 241 Or App 351, 250 P3d 38 (2011).

1

DE MUNIZ, C. J.

Defendant in this criminal case is a native Spanish speaker whose command of the English language is weak. A witness observed defendant's vehicle leave the road at a high rate of speed, roll over, and come to rest in an onion field. The police officer responding to the event arrested defendant for driving under the influence of intoxicants. The issue presented in the case is whether, for purposes of the implied consent laws, the police officer "informed" defendant of the consequences of refusing to take a breath test when the officer explained those consequences to defendant in English. The trial court concluded that defendant had been adequately informed and declined to suppress evidence of defendant's refusal to take a breath test. A jury convicted defendant of driving under the influence of intoxicants (DUII), ORS 813.010, and the trial court convicted defendant of refusing to take a breath test, ORS 813.095.[1] The Court of

---

[1] After defendant committed his crimes, the statutes governing driving under the influence of intoxicants, including some of the implied consent statutes at issue here, were amended in various respects. Those amendments do not affect our analysis in any way. For convenience, therefore, in this opinion, we refer to and quote the version of the statutes that are in effect today.

ORS 813.010 provides, in part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or

Appeals affirmed defendant's convictions without opinion. We allowed defendant's petition for review to consider whether the state was required to prove that defendant understood the statutory advice of the rights and consequences of a driver's refusal to take a breath test before his refusal to take the test could be admitted in evidence against him in his criminal cases. We now hold that evidence of a DUII defendant's refusal to take a breath test is admissible against that defendant even if the state does not establish that the defendant understood the information given about the rights and consequences of refusing to take the breath test.

The following facts are not in dispute. On June 28, 2008, defendant and a coworker drank beer together at the end of the workday, and then defendant left the workplace, alone, in his vehicle. Sometime later, a witness saw defendant's car make a turn while at high speed. The witness saw the car hit the side of the road, fly into the air, travel a few hundred feet, roll, and then land in an onion field. The witness, who lived near the scene of the accident, called the sheriff's office and then continued to watch the vehicle until help arrived. She did not observe anyone leave the vehicle. Two officers, Leavitt and Romans, arrived on the scene and found the vehicle in the field. The vehicle was registered to defendant and his wife. Defendant was inside the vehicle, in the passenger seat, wearing a seat belt. Defendant was bleeding from his nose and there was

---

"(c) Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance."

The text of ORS 813.095 is set out later in this opinion.

blood on both the steering wheel and the passenger door of the vehicle. Defendant smelled of alcohol and had bloodshot, glassy eyes, with droopy eyelids.

Defendant told Romans that someone else had been driving. He identified the driver as "Juan Martinez," and indicated that the driver had run from the vehicle in the direction of town. The officers looked in the muddy field for footprints but did not find any. Romans did not believe that anyone else had been driving the vehicle.

Romans noticed a language barrier in his communication with defendant. Romans spoke a few words of Spanish and used those words and gestures when conveying information and requests to defendant; similarly, defendant responded with gestures and a few words of English. For example, Romans asked defendant to perform various field sobriety tests by asking him in English, using a few Spanish words, and occasionally demonstrating the test. Defendant complied with the request to perform field sobriety tests, although he did not always understand, before Romans demonstrated, exactly what Romans wanted him to do. Defendant performed poorly on the field sobriety tests. Romans concluded that defendant was impaired and arrested him.

Romans transported defendant to the police station and took him into a room with an Intoxilyzer machine. Romans read to defendant the Department of Motor Vehicles implied consent form "word for word in English" and then asked defendant whether he would take the breath test.[2] Defendant responded by asking Romans what he

---

[2]    As we will explain in more detail below, the implied consent form is a list of the legal consequences of refusing to take a breath test, required by ORS 813.100, and

4

would do. Romans replied that it was defendant's choice whether or not to take the test. At that point, Romans believed that defendant understood that he was being asked to submit to a breath test. According to Romans, defendant then "stated in substance he did not want to take the test." At trial, Romans could not remember whether defendant responded verbally or simply shook his head no in response to the request.

Defendant was charged with DUII and refusing to take a breath test.[3] Before his trial on those charges, defendant moved to suppress the evidence of his refusal to take the breath test, arguing that, because he could not understand English, he was not "informed" of the consequences of refusing the breath test under ORS 813.130, and, therefore, evidence of his refusal was not admissible against him at his trial.[4] The trial court conducted a hearing on the matter, but ultimately concluded that it was bound by the Court of Appeals decision in *State v. Nguyen*, 107 Or App 716, 813 P2d 569 (1991). In that case, the Court of Appeals held that, despite a language barrier (the defendant spoke only Vietnamese), the statute was satisfied by the sheriff reading the rights and consequences in English aloud. According to that court, the statute requiring the officer

substantially as set out in ORS 813.130. It is commonly referred to (and is referred to in places in the statutes) as the "rights and consequences."

[3] Defendant also was charged with one count of careless driving. *See* ORS 811.135 (defining offense). That charge is not at issue in this case. The careless driving charge and the charge of refusing to take a breath test were tried to the court. The DUII charge was tried to a jury.

[4] We set out the text of ORS 813.130 later in this opinion.

5

to inform the arrestee of the rights and consequences of refusing a blood alcohol test did not require that the arrestee actually understand that information. *Id.* at 720. Based on *Nguyen*, the trial court denied defendant's motion to suppress.[5] As previously noted, defendant was convicted on all charges,[6] and the Court of Appeals affirmed without opinion.

On review, defendant argues that Romans violated the implied consent statutes by reading the rights and consequences to him in a language that Romans knew he would not understand, and that that statutory violation required suppression of his refusal to take a breath test in his prosecution for DUII and refusing to take a breath test.

A brief overview of the relevant statutes provides a framework for our analysis.

---

[5] The trial court found that defendant understood that he was being asked to take a breath test and that defendant understood some minimal English, but stated,

> "I'm sure not able to make a finding that he knew and completely understood all the rights and consequences, and that's what bothers me here, but the *Nguyen* case doesn't require that."

In addition, in the context of ruling on the charge of refusing to take a breath test, the trial court again concluded that *Nguyen* required admission of evidence of defendant's refusal, notwithstanding its finding

> "that [defendant's] English abilities were very limited. The officer was aware that they were very limited, that the officer certainly had to be aware that his ability to understand the implied consent rights were -- in English were slim to none."

[6] The jury convicted defendant on the DUII charge. The trial court found defendant guilty of careless driving and of the charge of refusing to take a breath test.

Under ORS 813.100(1), anyone driving on public roads in Oregon has impliedly consented to a chemical test of his or her breath for purposes of determining the person's blood alcohol content if the person has been arrested for DUII.[7] ORS 813.100(1) provides:

> "Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath, or of the person's blood if the person is receiving medical care in a health care facility immediately after a motor vehicle accident, for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. A test shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. Before the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130."

That means that a driver may not legally refuse to take a breath test. In fact, refusal itself is a violation. ORS 813.095 provides, in part:

> "(1) A person commits the offense of refusal to take a test for intoxicants if the person refuses to:
>
> "(a) Take a breath test when requested to do so in accordance with the provisions of ORS 813.100[.]"

A person may, of course, *physically* refuse to take the test, and the

---

[7] In addition, under ORS 813.100(1), Oregon drivers have given implied consent to a chemical test of the driver's blood if the driver is receiving medical care after an accident. Moreover, drivers have given implied consent to the testing of their urine in certain circumstances, ORS 813.131, and to the performance of field sobriety tests, ORS 813.135.

legislature has chosen to forbid the use of physical force to compel drivers to submit to the test. *See* ORS 813.100(2) ("No chemical test of the person's breath or blood shall be given * * * if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130.").[8] At the same time, however, the implied consent statutes mandate that a person who has refused to take the test must suffer certain consequences. Among other things, when a person refuses to take a breath test, the person's driving privileges are subject to suspension, ORS 813.100(3); the length of the suspension is enhanced, ORS 813.420; the arresting officer must immediately take custody of the person's driver license, ORS 813.100(3)(a); evidence of the person's refusal may be offered against the person, ORS 813.310; the person is not eligible for a hardship driving permit for at least 90 days, ORS 813.520(1); and the person is subject to fines, ORS 813.095.

The implied consent statutes also require that the driver be informed of those consequences. ORS 813.100(1) provides that, "[b]efore the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130." ORS 813.130, in turn, provides, in relevant part:

> "This section establishes the requirements for information about rights and consequences for purposes of ORS 813.100 and 813.410. The

---

[8]    When Oregon's implied consent statutes were adopted, the federal constitution permitted physically compelling a driver to submit to a blood alcohol test. As the United States Supreme Court stated in *South Dakota v. Neville*, 459 US 553, 563, 103 S Ct 916, 74 L Ed 2d 748 (1983), a state could "legitimately compel the suspect, against his will, to accede to the [blood alcohol] test."

following apply to the information about rights and consequences:

"(1) The information about rights and consequences shall be substantially in the form prepared by the Department of Transportation. The department may establish any form it determines appropriate and convenient.

"(2) The information about rights and consequences shall be substantially as follows:

"(a) Driving under the influence of intoxicants is a crime in Oregon, and the person is subject to criminal penalties if a test under ORS 813.100 shows that the person is under the influence of intoxicants. If the person refuses a test or fails, evidence of the refusal or failure may also be offered against the person.

"(b) The person will fail a test under ORS 813.100 for purposes of criminal penalties if the test discloses a blood alcohol content of 0.08 percent or more by weight. The person will fail a test for purposes of the Motorist Implied Consent Law if the test discloses a blood alcohol content of:

"* * * * * [setting out various percentages for various conditions]

"(c) If the person refuses or fails a test under ORS 813.100, the person's driving privileges will be suspended. The outcome of a criminal charge for driving under the influence of intoxicants will not affect the suspension. The suspension will be substantially longer if the person refuses a test.

"(d) If the person refuses a test or fails a breath test under ORS 813.100 and has an Oregon driver license or permit, the license or permit will be taken immediately and, unless the person does not currently have full valid driving privileges, a temporary driving permit will be issued to the person.

"(e) If the person refuses a test under ORS 813.100, the person is not eligible for a hardship permit for at least 90 days, and possibly for three years, depending on the following factors set forth in ORS 813.430:

"* * * * * [setting out factors]

"(f) If the person refuses a breath test under ORS 813.100, or refuses a urine test under ORS 813.131 and 813.132, the person is subject to a fine of at least $500 and not more than $1,000.

9

"(g) After taking a test under ORS 813.100, the person will have a reasonable opportunity, upon request, for an additional chemical test for blood alcohol content to be performed at the person's own expense by a qualified individual of the person's choosing.

"(h) The person has a right to a hearing to challenge the validity of the suspension before the suspension becomes effective.  The person must make a written request to the department for such a hearing.  If the person wins at the hearing, the person's driving privileges will not be suspended.  If the person loses at the hearing, the suspension will remain in effect during any court review of the hearing.

"(i) If the person is issued a temporary driving permit under ORS 813.100, the information provided to the person shall include the number of hours before the driving permit will be effective and the number of days the permit will be effective.

"(j) The information provided to the person shall include the number of days within which a person must request a hearing under ORS 813.410.

"(k) The information provided to the person shall include the number of days within which a hearing under ORS 813.410 will be held.

"(l) The person may possibly qualify for a hardship permit in 30 days if the person fails a test, depending on the person's driving record."

In this case, Romans read the rights and consequences of refusing a breath test to defendant at the police station after he arrested defendant.[9]  The issue is whether the obligation stated in ORS 813.100(1) that "the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130" also required the state to prove that defendant -- a person with limited English-speaking skills --

---

[9] Romans read from a form prepared by the Department of Motor Vehicles. Defendant has not argued that the form Romans read to him did not contain the information that ORS 813.130 required.

10

understood the oral notice of consequence and rights.[10]

Defendant argues that the plain words of ORS 813.100 suggest that a defendant must be capable of understanding the rights and consequences before the consequences of a refusal can be used against a defendant at trial. ORS 813.100(1) provides that, before a police officer administers a breath test, the driver "shall be *informed* of consequences and rights as described under ORS 813.130." (Emphasis added.) Defendant argues that the word "inform" means to "to communicate knowledge to : make acquainted : TELL, ADVISE, ENLIGHTEN," *Webster's Third New Int'l Dictionary* 1160 (unabridged ed 2002), something that does not happen when a police officer delivers the rights and consequences in a language that the defendant does not understand. And, according to defendant, when a defendant has not been "informed" under ORS 813.100, his or her refusal to take the breath test is not admissible in a subsequent criminal action, because ORS 813.310 provides that only evidence of a person's refusal "to submit to a chemical test *under ORS 813.100*" is admissible in such a proceeding:

> "If a person refuses to submit to a chemical test under ORS 813.100 * * *, evidence of the person's refusal is admissible in any civil or criminal action, suit or proceeding arising out of acts alleged to have been committed while

---

[10] *Amicus curiae* ACLU Foundation of Oregon, Inc., argues that admission of defendant's refusal to take the breath test violated his federal right to due process under the Fourteenth Amendment to the United States Constitution and violated the Privileges and Immunities Clause of the Oregon Constitution. Or Const, Art I, § 20. Defendant himself never made those or any other constitutional arguments in the trial court or on appeal in this case. They are not preserved and we do not address them.

the person was driving a motor vehicle on premises open to the public or the highways while under the influence of intoxicants."

Defendant contends that that conclusion is bolstered by the implication in ORS 813.320 that a violation of the implied consent law is grounds to exclude otherwise competent evidence in a criminal action for a violation of ORS 813.010 (driving under the influence of intoxicants). ORS 813.320 provides, in part:

"The provisions of the implied consent law, except ORS 813.300 [dealing with use of blood alcohol percentages as evidence], shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or proceedings or in any criminal action other than a violation of ORS 813.010 * * *."

Defendant may be correct that the common understanding and dictionary definition of the word "inform" is, generally, to impart information. However, it is not necessary for us to resolve the parties' dispute about the meaning of that term, because even if the term means what defendant contends, a failure to "inform" a driver in that sense does not result in the exclusion of evidence of his refusal to take the breath test.

Defendant argues that the primary objective of the rights and consequences advice requirement is to coerce an arrestee into taking the breath test, *State v. Trenary*, 316 Or 172, 177-78, 850 P2d 356 (1993) (so stating in context of field sobriety tests), and that the secondary objective is to render a refusal admissible in a DUII trial as evidence of the defendant's guilty mind. *See State v. Fish*, 321 Or 48, 56, 893 P2d 1023 (1995) (state uses evidence of refusal to prove person's belief that results would be incriminating). He contends that neither objective is furthered when the rights and consequences are not provided to the arrestee in a way that the arrestee is capable of

12

understanding. That is, the rights and consequences lose their coercive force if a driver suspected of DUII does not understand them. Likewise, defendant argues, the implication that the driver refused because the driver was cognizant of his or her own guilt is undermined.

We agree that informing a driver of the rights and consequences of refusing to take the breath test in a language that the driver does not understand does not further the legislative goal of coercing that driver to take the test. However, it does not change the probative value of the driver's refusal as evidence of his or her guilt. As long as it is clear that the driver knew that he or she was being asked to take a breath test to measure his or her blood alcohol level -- and there is no question that defendant understood that much here -- it is reasonable to infer from the *fact* of the driver's refusal to take that test that the driver believed that he or she would fail it. As this court stated in *Fish*,

> "In offering an individual's refusal * * * into evidence, the state wants the jury to infer from the fact of an individual's refusal that he or she is saying, 'I refuse to perform [the] * * * tests because I believe I will fail them.' Thus, the fact that a person refused or failed to perform * * * tests inferentially may communicate the person's belief -- that the person refused to perform the tests because he or she believed that the performance of the tests would be as incriminating."

321 Or at 56. That inference is available whether or not the defendant based his or her decision to refuse on a full understanding of all the consequences of a refusal.

More importantly, under the law, a driver *already has consented to the test*. The driver cannot legally refuse. As this court has stated, the purpose of the reference to "refusal" in the implied consent statutes "is not to reinstate a driver's right to choice, let alone a voluntary and informed choice, but rather to nonforcibly enforce the driver's

13

previous implied consent." *State v. Newton*, 291 Or 788, 793, 636 P2d 393 (1981), *overruled in part on other grounds by State v. Spencer*, 305 Or 59, 750 P2d 147 (1988). Thus, when a driver is asked to take a breath test, his or her only decision is whether to physically refuse. That is, "[t]he very concept of implied consent * * * was intended to eliminate the right of choice and to recognize actual choice *only* in the sense of a forbearance of physical resistance." *Id*. at 798 (emphasis added). The driver may choose to physically refuse, and the state will not force the driver to do what he or she is legally obligated to do. However, because the driver has only the physical ability, but not the legal right, to refuse, the legal validity of the driver's refusal does not depend on whether his or her decision to physically refuse is fully informed or voluntary.

As is evident from the foregoing, the overarching purpose of the rights and consequences requirement is to coerce a driver's submission to take the tests; it is not to inform the driver of the specifics of the law. As this court stated in *Spencer*,

> "The history and development of the implied consent law * * * suggest that the advice to be given an arrestee was intended to provide an additional incentive, short of physical compulsion, to induce submission."

305 Or at 71. Thus, whether a driver makes a knowing and voluntary choice to refuse is of little or no consequence. "[T]he [implied consent] statute's references to a driver's 'refusal' do not evince a legislative concern that the driver make a voluntary and fully informed decision whether to submit to the test."[11] *Id.*

---

[11]     Context supports the conclusion that, in enacting the implied consent laws in general, and in particular the nature of the rights and consequences, the legislature was

14

Moreover, as the state points out in its brief to this court, the legislative history of ORS 813.130 suggests that the legislature's concern in enacting that statute was mainly with devising a simple form to serve as a persuasive tool to compel submission to

concerned with the collection of evidence, and not the creation of a consensual choice for an arrested driver. ORS 813.140 provides that a police officer may collect the blood or urine of an unconscious person without that person's consent, and without having first advised that person of the rights and consequences of refusing, under certain circumstances:

"Nothing in ORS 813.100 is intended to preclude the administration of a chemical test described in this section. A police officer may obtain a chemical test of the blood to determine the amount of alcohol in any person's blood or a test of the person's blood or urine, or both, to determine the presence of a controlled substance or an inhalant in the person as provided in the following:

"* * * * *

"(2) * * * [F]rom a person without the person's consent if:

"(a) The police officer has probable cause to believe that the person was driving while under the influence of intoxicants and that evidence of the offense will be found in the person's blood or urine; and

"(b) The person is unconscious or otherwise in a condition rendering the person incapable of expressly consenting to the test or tests requested."

That statute permits the police to use an invasive procedure -- a blood or urine draw -- to collect inculpatory physical evidence when the arrested driver is unconscious or incapacitated. Consent to such testing is implicit, and there is no requirement that the person even be aware of the option to refuse. Obviously, an unconscious person would be incapable of understanding the rights and consequences, and requiring the police to inform the driver of the rights and consequences would serve no coercive purpose. And the legislature dispensed with that requirement entirely in that situation. That suggests that the legislature's main purpose in enacting the implied consent statutes was to ensure that evidence of the driver's blood alcohol content was available for a later prosecution, and not to create an occasion for an uncoerced choice by the driver.

15

the tests. When the implied consent laws originally were enacted, they did not specify the form that the advice of rights and consequences should take. Because the legal consequences flowing from a refusal to take the tests were set out in various different statutes, legislators discussed the need to develop a "simplified procedure" to facilitate enforcing the impaired driving laws that would result in a more streamlined process for providing the rights and consequences. Tape Recording, Senate Judiciary Committee Public Hearing, SB 203, Mar 28, 1985, Tape 69, Side B (statement of Sen James M. Simmons). Providing information about the rights and consequences "as described under ORS 813.130" -- that is, in substantially the form set out in that statute, in English -- furthers that legislative goal in most situations encountered by the police, even if not every driver is capable of fully understanding the legal consequences of refusing.[12]

It follows that, so long as the arresting officer complied with the requirement to read the driver the rights and consequences substantially as set out in ORS 813.130, the officer has informed the driver of those rights and consequences "as described under ORS 813.130." ORS 813.100(1). The officer need not make a separate determination whether the driver understood those rights and consequences.

Defendant argues that this court's decision in *Fish* suggests that more is

---

[12]    We recognize that, in this digital age, it may be a simple matter for police departments to have computers programmed with prerecorded translations of the implied consent advice in almost any language police officers might encounter in a given jurisdiction. However, this case is about what the statutes require, and not what this court thinks is advisable or convenient for police departments to do.

required. In *Fish*, the court stated that "an officer's advice of consequences complies with ORS 813.135 [driver impliedly consents to field sobriety tests] if it adequately informs the driver of the consequences of refusal so as to bring further pressure on the driver to perform the tests." 321 Or at 53. Defendant contends that that is the test that this court should apply here, and advice of rights and consequences that a driver cannot understand because of a language barrier does not "adequately inform the driver of the consequences of refusal."

*Fish*, however, dealt with field sobriety tests. The statutes governing field sobriety tests differ in a crucial respect from the statutes governing implied consent to breath tests. Specifically, the field sobriety test implied consent statutes do not mandate that any particular wording be used to inform drivers of the consequences of refusing to submit. ORS 813.135 provides that a driver is deemed to have consented to submit to field sobriety tests, but

> "[b]efore the tests are administered, the person requested to take the tests
> shall be informed of the consequences of refusing to take or failing to
> submit to the tests under ORS 813.136."

ORS 813.136, in turn, does not require any particular advice concerning the consequences of refusal. Rather, it simply states:

> "If a person refuses or fails to submit to field sobriety tests as required by
> ORS 813.135, evidence of the person's refusal or failure to submit is
> admissible in any criminal or civil action or proceeding arising out of
> allegations that the person was driving while under the influence of
> intoxicants."

In *Fish*, the police officer informed the driver that, if he refused to submit to field sobriety tests, that refusal could be used against him "in court." As is evident

17

from the material quoted above, ORS 813.136 provides that a refusal may be admissible in "any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants." Based on that difference, the defendant moved to suppress evidence of his refusal. After noting that the main purpose of the requirement that drivers be advised of the consequences of refusing to submit to field sobriety tests is to bring pressure on drivers to submit to those tests, and that the reason that the legislature enacted ORS 813.135 and ORS 813.136 was to compel drivers to take those tests, this court held:

> "an officer's advice of consequences complies with ORS 813.135 if it adequately informs the driver of the consequences of refusal so as to bring further pressure on the driver to perform the tests.
>
> "In this case, the advice of consequences given was no less effective in bringing pressure upon defendant than if the deputy had used the exact words of the statute. Under the facts of this case, we conclude that the warning given by the deputy sufficiently informed defendant of the consequences of refusal so as to comply with the requirements of ORS 813.135."

*Fish*, 321 Or at 53.

In contrast, ORS 813.100 requires drivers to be informed of the consequences of refusal "as described under ORS 813.130," and ORS 813.130, in turn, requires that advice to be "substantially" in the words set out in the statute. Thus, when a police officer gives the rights and consequences in the words mandated by ORS 813.130, the officer "informs" the driver "as described under ORS 813.130." That is what happened in this case. And, as we have stated, a police officer need not make a separate determination whether the arrested person fully understands the rights and consequences,

18

or whether the officer has brought further pressure to bear on the driver to submit to the tests, for the driver's refusal to be admissible in a future legal proceeding.

Defendant insists that this court's decision in *Trenary* is to the contrary, insofar as the court suggested there that a person has the right to suppression of his or her refusal to submit to tests if he or she was not given information concerning the consequences of refusing. Defendant reads too much into that case. In *Trenary*, the defendant submitted to field sobriety tests without having first been warned of the consequences of refusal, and he later moved to suppress the results of those tests. This court concluded that, like the implied consent statutes dealing with breath tests, ORS 813.135 (providing that drivers impliedly consent to field sobriety tests) and ORS 813.136 (providing that refusal to take field sobriety tests is admissible at trial) were intended to coerce drivers to submit to field sobriety tests, and that no statute excluded the results of the tests from evidence if an unwarned driver did take the tests.[13] 316 Or at 178. In reaching that conclusion, the court stated:

> "The only 'right' of a defendant that arguably arose from the enactment of ORS 813.135 and 813.136 is the implied right of a person who has *refused* to submit to the tests to have evidence of his or her refusal suppressed if information concerning the consequences of refusal was not given. The main purpose of the second sentence of ORS 813.135

---

[13] The court held that the statutes do not provide for exclusion of an uninformed submission because, in such a case, there is no prejudice to the driver in any legal sense. As the court stated, "[i]n taking the test, the driver is only doing that which he or she has already consented to do." *Trenary*, 316 Or at 178.

[providing that the driver 'shall be informed' of the consequences of refusing before field sobriety tests are administered] was not to create a right, but to bring further pressure on suspected intoxicated drivers to take the field sobriety tests. The statute aimed to advise drivers who may be disposed *not* to perform the tests that, if they refused, evidence of the refusal would be admissible, provided that they were warned of the consequences of refusal. The statute is directed at drivers who refuse to take the test, not at drivers who do take the test, consistent with their consent already implied.

"The text of ORS 813.135 and 813.136 compels the conclusion that these statutes were enacted for two overriding reasons: First, to provide that operation of a vehicle was a consent to field sobriety tests (thus providing the foundation for admissibility of evidence of a refusal * * *); and, second, to compel drivers to take field sobriety tests. * * *

"True, ORS 813.135 and 813.136 contain an implied exclusionary clause. The statutes imply that, if the driver *refuses* the tests and no information concerning the consequences of refusing was given, evidence of refusal is not admissible. That implication follows from the provision that makes evidence of the refusal admissible if the driver is informed of the consequences of refusal."

*Id.* at 177-78 (emphasis in original).

In this case, as we have held, defendant was provided the rights and consequences as required by ORS 813.130. There is no dispute that Romans read defendant the Department of Motor Vehicles implied consent form, which set out all the rights and consequences included in ORS 813.130. Therefore, the exclusionary clause implied by ORS 813.310 and ORS 813.320 (applicable to evidence of refusal to take a breath test, corresponding to ORS 813.136, dealing with evidence of refusal to submit to field sobriety tests), is not implicated here.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.