BALMER, J., dissenting.
Oregon's implied-consent statutes play an important role in preventing intoxicated driving and in ensuring that the state is able to punish individuals who choose to drive while intoxicated. Those statutes also raise difficult constitutional questions and interrelated questions of statutory construction. For that reason, this court has often struggled with how to interpret and apply those statutes. Recent attempts by this court to answer even relatively straight-forward questions relating to those statutes have required the court to grapple with past inconsistent or ambiguous interpretations. See State v. Swan , 363 Or. 121, 420 P.3d 9 (2018). Unfortunately, the approach that the majority takes in this case makes some of these questions more complicated than they need to be and finds ambiguity where the statutes contain none. While I agree with much that the majority has to say, the effect of the opinion is to introduce unnecessary confusion into the implied-consent statutes, and into their implementation. For that reason, I respectfully dissent.
**351 The question in this case is whether Article I, section 9, prohibits defendant's refusal to take a breath test from being introduced as evidence against him in a criminal case. Although the issue presented in this case has constitutional dimensions, the principal dispute between the parties is rooted in questions of statutory construction. For that reason, I begin with an overview of the statutes at issue, Oregon's implied-consent laws. Those laws are oriented around a key provision, found in ORS 813.100(1) :
"Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath *** for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. A test shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. Before the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130."
That provision accomplishes several things. First, it establishes-or at least attempts to establish-that an individual's act of driving a motor vehicle constitutes that person's *373 "consent" to a test of his or her breath. That is significant because a breath test is a search, and under Article I, section 9, of the Oregon Constitution a police officer generally cannot conduct a search, or force a person to submit to a search, without first obtaining a warrant, unless an exception to the warrant requirement applies.[1] Thus, the implied-consent statutes are a mechanism for obtaining constitutional authorization to perform the search. I discuss the legal effectiveness of that statutory mechanism below. **352 Second, the statute provides that the test shall be administered only after the suspect is informed of the consequences of refusing to submit to a breath test and of certain statutory rights in the breath test process. Those consequences are defined elsewhere in the statutory scheme. They include a driver's license suspension of at least one year, ORS 813.420 ; being found guilty of a traffic violation with a presumptive $650 fine, see ORS 813.100(3) and ORS 813.095 ; and introduction of the refusal to take the test as evidence of guilt in a subsequent criminal prosecution, ORS 813.310 -the last, of course, being at issue in this case. One right that the implied-consent laws provide to suspects is the right to "refuse" to "submit" to a breath test, set out in ORS 813.100(2) :
"No chemical test of the person's breath or blood shall be given, under subsection (1) of this section, to a person under arrest for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance, if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130."
Note that ORS 813.100(2) does not speak of the driver revoking the consent that he or she is deemed to have given under ORS 813.100(1) ; rather, focusing on the practical realities of performing a breath test, the statute describes the "refusal" of the driver to "submit" to the test. As we explained in Swan , "[t]he implied-consent statutes thus provide that, notwithstanding the consent implied by driving on the public highways, a DUII suspect retains a statutory right to refuse to take a breath test at the point of arrest." 363 Or. at 139, 420 P.3d 9. That the state accords such a statutory right is understandable. Even where the constitution does not prohibit the state from conducting a breath test, the state is faced with the practical difficulty of getting the suspect to give the required breath sample. As we have previously recognized, "[a] person may, of course, physically refuse to take the test, and the legislature has chosen to forbid the use of physical force to compel drivers to submit to the test." State v. Cabanilla , 351 Or. 622, 628, 273 P.3d 125 (2012) (emphasis in original).
**353 Therefore, at least with respect to breath tests, the implied-consent laws envision a three-step process. First, the driver "consents" to the test by the act of driving, which gives the state constitutional authorization to perform the breath test. Second, after the driver is arrested because police believe she is driving under the influence of intoxicants, the officer requests that she submit to a breath test and advises her of her rights, including the statutory right to refuse a search, and of the consequences of refusing a search. Third, the driver makes her choice, no doubt influenced by the consequences of refusal that she has just been read. If the driver says yes, then the officer is statutorily authorized to perform the breath test. If the driver says no, exercising her right, then ORS 813.100(2) forbids the officer from performing the breath test, but the other consequences, mentioned above, are triggered.
The state's first argument in this case focuses on the first step of that process, the implied consent itself. The state argues that, because defendant consented to the eventual search of his breath when he made the decision *374 to drive, defendant had no right to withhold consent after he had been arrested, and thus no constitutional provision protected defendant's refusal to consent. The majority responds to that argument by noting, as we held in Swan , "that the implied-consent statutes also include a provision that permits a person who drives on public roads to later refuse to take a breath test if and when the person is arrested for DUII." 364 Or. at 338, 434 P.3d at 365. But all we held in Swan was that a suspect has "a statutory right to refuse to take a breath test at the point of arrest." 363 Or. at 139, 420 P.3d 9 (emphasis added). We did not hold that, upon arrest, a suspect's constitutional right to withhold consent is restored. The majority's holding that implied consent disappears, or is no longer binding, at the point of arrest leaves implied consent with no role to play in the statutory scheme. That is contrary to the structure of the statute, as I have explained above.
Nevertheless, I agree with the majority that the state's first argument fails, albeit for a different reason. Statutorily-implied consent is not the equivalent of, or a substitute for, constitutional consent. The implied-consent **354 statutes purport to authorize a search on the basis that "[a]ny person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent" to certain searches of her breath or blood under specified circumstances. ORS 813.100(1). But whether a person has given constitutionally valid consent to a search or seizure is a question of constitutional law and the fact that a statute states that all drivers have given consent does not mean that, as a legal or factual matter, the drivers actually have done so.
We have called the theory of implied consent into question before. State v. Newton , 291 Or. 788, 801, 636 P.2d 393 (1981) (plurality opinion) overruled on other grounds by State v. Moore , 354 Or. 493, 318 P.3d 1133 (2013) ("The warrant requirement may be excused if there is consent. By this, we mean actual consent. Defendant's statutorily implied consent cannot excuse an otherwise unconstitutional seizure."). Moreover, despite a multitude of implied-consent cases, we have never upheld an otherwise-impermissible search on a theory of implied consent. And, outside the implied-consent context, we recently reaffirmed that consent for purposes of Article I, section 9, must be actual consent, determined by the authorization that the individual intended to give: "[I]n determining whether a particular search falls within the scope of a defendant's consent, the trial court will determine, based on the totality of circumstances, what the defendant actually intended." State v. Blair , 361 Or. 527, 539, 396 P.3d 908 (2017). The state cannot, consistent with that principle, impute consent to an individual who does not intend to give it.[2] Although the concept of "implied," as opposed to express, consent may be valuable, and appropriately used, in certain other contexts, as a matter of constitutional law the existence of a statute that "deems" a driver to have **355 irrevocably consented to a search whenever he or she operates a motor vehicle, is problematic.
Although the state provided some briefing on the matter, it is not relevant in this case whether "deemed" consent might fall into or satisfy a warrant exception other than the consent exception.[3] And that question may be *375 something of a red herring in general. Although the constitutional authorization for the search of suspects' breath, under the implied-consent laws, likely cannot rest on the "implied" or "deemed" consent that ORS 813.100(1) purports to establish, ORS 813.100(5)[4] makes clear that the state may derive constitutional authority to perform a breath test from other sources. One well-established warrant exception available to the state in most DUII cases is the exigent circumstances exception. Under that exception, the police may perform a search without obtaining a warrant, provided that they can "establish both that the officers had probable cause and that exigent circumstances justified the officers' warrantless search." State v. Ritz , 361 Or. 781, 790, 399 P.3d 421 (2017). ORS 813.100(1), by its terms, applies only after the suspect has been arrested for driving under the influence of intoxicants, which requires probable cause. ORS 133.310(1) (providing for warrantless arrest based on probable cause). And, as this court has recognized, the natural dissipation of alcohol in the bloodstream will almost always qualify as an exigent circumstance:
"It may be true, phenomenologically, that, among such cases, there will be instances in which a warrant could have been both obtained and executed in a timely fashion.
**356 The mere possibility, however, that such situations may occur from time to time does not justify ignoring the inescapable fact that, in every such case, evidence is disappearing and minutes count. We therefore declare that, for purposes of the Oregon Constitution, the evanescent nature of a suspect's blood alcohol content is an exigent circumstance that will ordinarily permit a warrantless blood draw of the kind taken here. We do so, however, understanding that particular facts may show, in the rare case, that a warrant could have been obtained and executed significantly faster than the actual process otherwise used under the circumstances. We anticipate that only in those rare cases will a warrantless blood draw be unconstitutional."
State v. Machuca , 347 Or. 644, 656-57, 227 P.3d 729 (2010) (emphasis in original). What is true of blood draws will also be true of breath tests, which present precisely the same exigency. Thus, in the substantial majority of cases in which an officer conducts a search in accordance with the implied-consent laws, both probable cause and an exigency will be present, and thus neither a warrant nor any other warrant exception will be necessary.[5] And in the rare cases where there is no exigency the officer will presumably be able to obtain a warrant and will not need a warrant exception at all.[6]
In any event, it is undisputed that in this case the state had both probable cause and exigent circumstances, and it is unnecessary to ground police authority to conduct the search (the breath test) on the dubious concept of implied consent as a source of constitutional authorization. Thus, under the implied-consent statutes, and under *376 **357 Article I, section 9, there was no impediment to the state requiring defendant to submit to a breath test.
Here, I reach the point upon which this case turns. The state argues that the second step of the implied-consent process that I have outlined above, where the suspect is asked to submit to a breath test, is a request to physically cooperate in the administration of the test, and not a request for defendant to give constitutionally sufficient consent to a search that otherwise would violate Article I, section 9. Defendant argues, however, that he was asked to consent to an otherwise unconstitutional search and that his refusal to do so cannot be used against him. The disagreement at the heart of this case, then, is whether an officer's request under ORS 813.100(2) is a request for consent to a search or a request for physical compliance in the administration of the breath test. If the state is correct, then defendant simply was not asked to consent at all, and his refusal was not an exercise of his Article I, section 9, rights.
I agree with the majority that,
"an officer's question to a driver asking whether the driver will take a breath test may be either (1) a request under ORS 813.140 for express consent to search the driver's breath that, if given, will supply a constitutional basis for the test; or (2) a request under ORS 813.100 that the driver 'submit' to a breath test that finds its constitutional justification elsewhere."
364 Or. at 342, 434 P.3d 367-68. Because that question is more central to how I would resolve this case, and because various particulars of the statute play into my disagreement with the majority, I discuss that statutory question in some detail.
The unambiguous text of Oregon's implied-consent statutes draws a consistent distinction between a request to submit to a breath test under ORS 813.100(2) and a request for the kind of express consent necessary to satisfy Article I, section 9. As discussed above, ORS 813.100(1) provides, in part, that when the requisite conditions are met "[a] test shall be administered upon the request of a police officer." (Emphasis added.) ORS 813.100(2) creates an exception to that otherwise mandatory rule:
**358 "No chemical test of the person's breath or blood shall be given, under subsection (1) of this section * * * if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130."
(Emphasis added.)
Put together, the first two subsections of ORS 813.100 create a dichotomy between cases where the test "shall be administered" and those where the suspect "refuses the request of a police officer to submit" to a chemical test. The statute thus treats compliance as the default and carves out an exception for refusal. That choice of words suggests that the administering officer's "request" is intended only to determine whether the suspect will submit to or refuse to participate in the administration of the test, and perhaps to persuade him not to refuse; it was not designed to obtain the suspect's consent. See Cabanilla , 351 Or. at 634-35, 273 P.3d 125 ("[T]he legislative history of ORS 813.130 [setting out the rights and consequences to be read to a suspect] suggests that the legislature's concern in enacting that statute was mainly with devising a simple form to serve as a persuasive tool to compel submission to the tests."). That reading is bolstered by the structure of ORS 813.100, discussed above, which takes for granted that the suspect already has "consented" simply by driving. As I outlined above, asking a suspect to give a breath sample under ORS 813.100(1) - (2) is a second step that is meant to take place only after the state has obtained constitutional authorization for the search. Thus, not only does nothing in ORS 813.100(2) indicate that the officer's request is intended to elicit a waiver of constitutional rights, but the logic of the statute dictates that such a waiver would be unnecessary at that point.
Moreover, other portions of the implied-consent laws do discuss situations where an officer requests or obtains a waiver of the suspect's Article I, section 9, rights, and do so in quite different terms. ORS 813.140 states,
*377 "Nothing in ORS 813.100 is intended to preclude the administration of a chemical test described in this section. A police officer may obtain a chemical test of the breath or **359 blood to determine the amount of alcohol in any person's blood *** as provided in the following:
"(1) If, when requested by a police officer, the person expressly consents to such a test."
(Emphasis added.) The words "expressly consents" in ORS 813.140 contrast with the implied (or "deemed") consent of ORS 813.100(1), and the alternate option of "refusal" of an officer's "request," in ORS 813.100(2). That contrast is made explicit by ORS 813.310 :
"If a person refuses to submit to a chemical test under ORS 813.100 or refuses to consent to chemical tests under ORS 813.140, evidence of the person's refusal is admissible in any civil or criminal action, suit or proceeding arising out of acts alleged to have been committed while the person was driving a motor vehicle on premises open to the public or the highways while under the influence of intoxicants."
(Emphases added.) As that text makes clear, when a suspect refuses a test under ORS 813.100, what the suspect is refusing to do is to "submit." Only under ORS 813.140 does the statute speak of refusing to "consent."[7] That interpretation is in line with our prior holdings that the
"legislative policy embodied in the implied consent law was ' "designed to overcome the possibility of physical resistance, despite legal consent, without resort to physical compulsion" by imposing adverse legal consequences on a refusal to submit to the test.' "
Machuca , 347 Or. at 658, 227 P.3d 729 (quoting State v. Spencer , 305 Or. 59, 67, 750 P.2d 147 (1988) (quoting Newton , 291 Or. at 793, 636 P.2d 393 )).[8]
**360 A suspect is entitled to refuse the request for physical compliance under ORS 813.100 by exercising the statutory right that we recognized in Swan , as defendant did in this case. But that the statute gives suspects a statutory right, and directs officers to respect the exercise of that right, does not entail that a request under the statute asks suspects to waive a constitutional right. Thus, an officer's request under ORS 813.100 is not intended to elicit actual, or express, consent, but something akin to compliance-compliance, subject to a statutory right not to comply. For that reason, an affirmative response to an officer's request under ORS 813.100, or a subsequent blow into a breathalyzer, is not a waiver of constitutional rights or express consent to the search.[9] An affirmative response is best parsed as "Yes, I will submit to the search"-all that the officer is asking-not "Yes, I will consent to the search."
The majority, however, concludes that defendant was not given a request under *378 ORS 813.100 at all-or at least that the state has not proven that he was. The majority states,
"Defendant does not take issue with that notion [that a refusal to physically cooperate may be introduced at trial], nor does he argue that the consequence that ORS 813.310 imposes for failure to submit under ORS 813.100 is unlawful. Rather, he contends only that the consequence that ORS 813.310 imposes for failure to give express consent under ORS 813.140 is unconstitutional. And, he argues, he understood [the officer's] question as seeking the latter and not the former."
That is something of a charitable reconstruction of defendant's argument because defendant never cited ORS 813.140 in his briefing, or argued that the officer's request **361 was something other than a request under ORS 813.100. Instead, he argued before this court that ORS 813.130 -the statute establishing "the requirements for information about rights and consequences for purposes of ORS 813.100," ORS 813.130 -"creates incentives for a defendant to consent to a breath test." That argument is mistaken because, as discussed above, ORS 813.100 and ORS 813.130 are geared toward obtaining physical compliance, not consent.
In any event, there should be no doubt in this case that the officer's request was made pursuant to ORS 813.100. Here, the officer's request followed a recitation of rights and consequences, as required by ORS 813.100(1) - (2) but not by ORS 813.140. While reading that warning, the officer spoke in the language of ORS 813.100(2), informing defendant that he was "about to be asked to submit to a breath test."[10] Nowhere in the request did the officer ask defendant for "consent" or otherwise indicate that he was seeking consent. Most tellingly of all, two of the consequences of refusal that defendant was read, including a $650 fine and a driver's license suspension, may be imposed only as a consequence for a refusal to submit under ORS 813.100, not for a refusal to consent under ORS 813.140. See ORS 813.095(1) (fine), ORS 813.100(3) (license suspension). Most of the warning that defendant was read concerned those two consequences. Based on that evidence, I have no difficulty concluding that the officer's request was made under ORS 813.100(2).
The majority does not discuss any of that evidence. Instead, it focuses on the officer's final phrasing of the request: "[W]ill you take a breath test?" 364 Or. at 343, 434 P.3d at 368 and on what the officer did not say: "[the officer] told defendant that he would be asked to submit to a breath test 'under the implied consent law,' but he did not specify the aspect of the implied-consent law to which he was referring." Id. But what matters is whether the officer's request, taken as a whole, was ambiguous, not whether particular lines are ambiguous out of context. The phrasing of the officer's final question is **362 not ambiguous if, as here, it is asked of a suspect who has just been informed that he is "about to be asked to submit to a breath test." Even if the officer did not explicitly mention ORS 813.100, the use of the word "submit," the reading of rights and consequences as required by ORS 813.100(1) - (2), and the focus on consequences that can only be imposed upon a refusal of a request under ORS 813.100 make it clear that that the officer was making a request under ORS 813.100. In this case, there was ample evidence that the officer was requesting defendant's physical compliance with the breath test and no evidence whatsoever that he was requesting consent. Even if the state bears a burden of proving that the request was made under ORS 813.100, 364 Or. at 343, 434 P.3d at 368, surely that burden was carried here.
For that reason, I conclude that defendant was not asked to give constitutionally valid consent. All he was asked to do was physically to participate in the administration of the breath test. Defendant exercised not a constitutional right, but a statutory right, to refuse the search.
Thus, the question that defendant asks us to decide, whether introduction of his exercise of a constitutional right can be used as evidence against him in a criminal case, simply is not presented here. The question is, *379 instead, whether defendant's assertion of a statutory right can be introduced as evidence against him in a criminal case. Because defendant was not asked to give consent to a search, did not consent to a search, and no search was performed, his Article I, section 9, rights would not be burdened, much less violated, by the introduction of defendant's exercise of the statutory right as evidence of his guilt.[11]
The majority's decision may do more harm than good for the rights of suspects. Recall that, in impaired driving cases where a suspect has been arrested, probable cause and exigent circumstances are almost always present, and **363 an order by an officer to a suspect to submit to a chemical test would not ordinarily present constitutional problems. The legislature extended to suspects the right to refuse a breath test with the intent of avoiding the use of physical force or criminal penalties against suspects who refuse to participate in the testing procedure. Such an approach is likely to reduce the unnecessary use of force by police and prevent confrontations that may endanger officers and suspects alike. But, in the majority's analysis, it appears that the statutory right, and the attendant fact that the officer requested rather than demanded defendant's compliance, is a source of the ambiguity that requires evidence of defendant's refusal to be excluded. By turning a statutory right into a source of constitutional difficulty for the state, the majority makes the further creation of such statutory rights less likely. I would avoid those difficulties, hold that the officer's request, understood in the context of the statutory framework, was not a request for defendant's consent to a search, and affirm defendant's conviction.
For those reasons, I respectfully dissent.
Nakamoto, J., joins in this dissent.

Of course, if the officer conducts a search (a blood draw, for example) based solely on the exigency, which does justify it, then the evidence discovered as a result of the search will be admissible even though the defendant's refusal to consent will not be.

I note that this position appears to be a developing consensus in other states. See State v. Butler , 232 Ariz. 84, 302 P.3d 609 (2013) ; Flonnory v. State , 109 A.3d 1060 (Del. 2015) ; State v. Wulff , 157 Idaho 416, 337 P.3d 575 (2014) ; McElwain v. Office of the Illinois Sec'y of State , 2015 IL 117170, 396 Ill.Dec. 1, 39 N.E.3d 550 ; Commonwealth v. Myers , 640 Pa. 653, 164 A.3d 1162 (2017) (plurality opinion); State v. Fierro 853 N.W.2d 235, 2014 SD 62 (2014). Cf. State v. Modlin , 291 Neb. 660, 675, 867 N.W.2d 609, 620 (2015) (holding that implied consent is initially valid but that it can be withdrawn); State v. Mitchell , 383 Wis.2d 192, 914 N.W.2d 151 (same) (2018)cert. granted , --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 2019 WL 166881 (Jan. 11, 2019).

The state cited Smith v. Washington Cty. , 180 Or. App. 505, 517-23, 43 P.3d 1171, rev. den. , 334 Or. 491, 52 P.3d 1056 (2002), and United States v. Montoya de Hernandez , 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). The searches in Smith , however, ultimately rested on the administrative search exception, which does not apply where the search, as here, is performed to enforce criminal laws. Nelson v. Lane Cty ., 304 Or. 97, 104-05, 743 P.2d 692 (1987). And the warrantless seizure in Montoya de Hernandez "occurred at the international border, where the Fourth Amendment balance of interests leans heavily to the Government." 473 U.S. at 544, 105 S.Ct. 3304. Neither of those cases lend support to a warrantless search here.

ORS 813.100(5) provides that
"[n]othing in this section precludes a police officer from obtaining a chemical test of the person's breath or blood through any lawful means for use as evidence in a criminal or civil proceeding including, but not limited to, obtaining a search warrant."

The concurrence, without addressing Machuca , suggests that whether an exigency is present "almost always" will turn "on a case-by-case inquiry." 364 Or. at 350, 434 P.3d at 372 (Kistler, S. J., concurring). That statement is inconsistent with Machuca , where the court made clear that in the ordinary case, absent unusual facts, the dissipation of blood alcohol content will constitute an exigency. I do not mean to suggest, however, that whether a breath test is "categorically permissible," 364 Or. at 349, 434 P.3d at 371 (Kistler, S. J., concurring), is relevant to the outcome in this case.

This analysis does not take into account the other warrant exception that may be available to the state in impaired driving cases, the exception for searches incident to arrest. The Supreme Court has held that the Fourth Amendment always "permits warrantless breath tests incident to arrests for drunk driving." Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). This court has not yet considered that issue under Article I, section 9.

Of course, ORS 813.310 does authorize the introduction of a suspect's "refusal to consent" in a criminal action. That provision raises the constitutional question that the majority decides. But that question is not presented in this case, and it will not be presented in other cases concerning a request under ORS 813.100(1) -(2), as the structure of the statute makes clear.

Portions of Moore , 354 Or. 493, 318 P.3d 1133, could be read to imply that a suspect's decision to submit to a breath test under the implied-consent statutes would waive the suspect's constitutional rights. But in Moore , the defendant had conceded that he had given consent to a search in response to a request under the implied-consent statutes, 354 Or. at 504 n. 9, 318 P.3d 1133, and we did not have cause to question that premise, upon which both parties agreed. The majority properly concludes that Moore does not stand in the way of its holding that a request under ORS 813.100 is not a request for consent. 364 Or. at 359 n. 8, 434 P.3d st 377 n. 8.

In Bumper v. North Carolina , 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), the Supreme Court held that the state's burden to show that consent to a search was "freely and voluntarily given * * * cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Id . at 548-49, 88 S.Ct. 1788 (footnotes omitted). The Georgia Supreme Court has applied this principle to a suspect's response to a request to submit to a breath test under that state's implied-consent statute and "distinguished compliance with the implied consent statute from the constitutional question of whether a suspect gave actual consent for the state-administered testing." Williams v. State , 296 Ga. 817, 821, 771 S.E.2d 373 (2015) (emphasis in original).

That same phrasing was repeated twice more in the warning. The officer told defendant, "Your driving privileges will not be suspended if you submit to any test requested and do not fail." (Emphasis added.) He also informed defendant that "[i]f you refuse to submit to a test or fail a breath test, you must request a hearing within ten days after the arrest." (Emphasis added.)

Defendant argues, in the alternative, that he was unconstitutionally forced to choose between waiving his Article I, section 9, right by consenting to a search and waiving his Article I, section 12, right against self-incrimination by giving an incriminating, testimonial statement through his refusal. That argument has the same flaw. Even on the assumption that defendant's refusal was testimonial, the argument fails because its premise is mistaken: Defendant was not asked to consent to a search or otherwise to waive any Article I, section 9, right.