2008 OK 31

**Ricki Royce HOLLIS, Plaintiff/Appellee,**

v.

**STATE of Oklahoma, ex rel., DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.**

No. 103,625.

Supreme Court of Oklahoma.

April 1, 2008.

Doug Friesen, Oklahoma City, OK, for Appellee.

A. DeAnn Taylor, Oklahoma City, OK, for Appellant.

WINCHESTER, C.J.

¶ 1 The central issue in this appeal is whether the trial court's decision to set aside the revocation of Hollis' driver's license, based on a finding that Hollis was mentally incapable of giving a knowing and conscious refusal to submit to a blood/breath alcohol test, is supported by sufficient evidence. We hold the trial court erred as a matter of law in finding Hollis presented sufficient evidence to prove his incapacity to give a knowing refusal to test.

## FACTUAL BACKGROUND

¶ 2 On the evening of September 29, 2004, Trooper Willie Timmons, while traveling north on the Kilpatrick Turnpike, observed Ricki Royce Hollis traveling southbound at a high rate of speed passing several other vehicles. Trooper Timmons followed Hollis for several miles and noticed that he was weaving in and out of his lane and hit the fog line several times. After pulling him over, the trooper noticed that Hollis' eyes were watery and glassy and his speech was slow and slurred. He asked Hollis if he had been drinking, and Hollis admitted to having consumed four drinks.[1] At a later point, Hollis also told the Trooper that he had taken medication. Trooper Timmons administered a standard field sobriety test, which indicated impairment, and he arrested Hollis for driving under the influence of alcohol.

¶ 3 Trooper Timmons read the requisite implied consent test in its entirety to Hollis five times between the time he arrested him and placed him in the police car and the time he processed him and placed him in a jail cell. At no time did Hollis ever respond to either the test request or Trooper Timmons' questioning as to whether Hollis understood the test. Hollis did not have any apparent physical or mental disabilities and remained conscious throughout the arrest and booking process, although at times he sobbed uncontrollably. Trooper Timmons informed Hollis that if he failed to consent to the blood test, his driving privileges would be revoked.

## PROCEDURAL HISTORY

¶ 4 As a result of his failure to consent to a test to determine his alcohol concentration, Hollis' driver's license was revoked for 180 days. 47 O.S.2004, § 753. That revocation was upheld at the hearing provided by 47 O.S.2004, § 754. Hollis then filed an appeal in the district court of Canadian County, Oklahoma. Hollis argued that, at the time of his arrest, he was mentally incapable of giving a knowing and conscious refusal to the requested test.

¶ 5 Only one witness, Trooper Timmons, testified. At the close of the evidence of the Department of Public Safety ("DPS"), Hollis moved for a directed verdict to set aside the revocation, which the trial court sustained on the grounds that DPS did not prove Hollis gave a knowing and conscious refusal. DPS appealed, and the Court of Civil Appeals ("COCA"), Division One, reversed and remanded the matter back to the trial court. *Hollis v. State ex rel. Department of Public Safety,* 2006 OK CIV APP 25, 131 P.3d 145

---

1.  At trial, Hollis testified he had consumed three drinks, while Trooper Timmons testified Hollis told him he had consumed four drinks.

(*Hollis I*). COCA held that "the district court's ruling was erroneous as a matter of law because it improperly placed the burden of proof on DPS to prove Hollis was incapable of refusing to submit to the chemical test." *Hollis v. State ex rel. Department of Public Safety*, 2006 OK CIV APP at ¶ 4, 131 P.3d at 146.

¶ 6 At the trial after remand, Hollis provided the sole testimony on his behalf. Hollis did not present any medical evidence regarding his mental state. Hollis testified that his son had been in an accident on August 31, 2003, and that he had been in and out of a coma for one year. On the day before Hollis' arrest, his son had spoken for the first time since his accident. On the date of his arrest, September 29, 2004, Hollis was visiting the office of friends where he consumed three glasses of vodka and orange juice. While on his way home, Hollis stated his wife called to tell him that his son's heart rate was high and that he needed to hurry home. At this point, Hollis began to drive between 90 and 95 miles per hour. Hollis remembered some details about the arrest but testified that he did not remember being read the implied consent advisory or being asked to take a blood or breath test. Trooper Timmons previously testified that Hollis had made some statement about having to get home because "his son had finally woken from a coma or had finally spoken, and that his wife was at home with his son alone and that he had to get home to help his son." Trooper Timmons further stated that Hollis "seemed pretty happy that his son was responding."

¶ 7 The trial court again ruled for Hollis and set aside the revocation of his license. The trial court reasoned that due to the "horrible, horrible personal tragedy going on

in the life of" Hollis, he was mentally impaired and "lacked the capacity to understand" the implications of refusing the implied consent. The court found that "the overwhelming guilt, the overwhelming urgency of that moment in time impaired Mr. Hollis to a degree that he was incapable of understanding he was even being given his right." [2] DPS appealed the ruling and this Court retained the matter.

## DISCUSSION

¶ 8 Oklahoma's implied consent statute provides that drivers in Oklahoma "shall be deemed to have given consent to a test or tests of such person's blood or breath" if they are arrested for any offense while "operating or in actual physical control of a motor vehicle ... while under the influence of alcohol or other intoxicating substance...." 47 O.S. 2004, § 751 (A). The civil penalty for violating the implied consent statute is the surrender of the violator's driver's license. 47 O.S. 2004, § 754(A). There are two exceptions for the failure to take the requested tests: (1) if the person is unconscious or (2) if the person is otherwise incapable of refusing to submit to the test. 47 O.S.2004, § 751(D). [3]

¶ 9 In order to revoke a license based on refusal to submit to a breath or blood test, DPS must prove, by a preponderance of the evidence: (1) that the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads while under the influence of alcohol and/or other intoxicating substance; (2) the person was placed under arrest; (3) the person refused to submit to the chemical test; and (4) the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test. *See* 47 O.S.

---

2. The trial court further stated that "the humanness of this case tugs at the heart of, I know, everyone involved, tugs at the heart of the Court in what was going on in that moment in time. And to see the guilt that Mr. Hollis has burdened himself with because of that day and the circumstances of that day is tragic because, Mr. Hollis, you should have no guilt in doing what you did in going to that job to celebrate a moment in the life of your son and speeding on the way back, whatever the circumstances that focaled [sic] into that moment in time that Trooper Timmons was caught up in having to do something, don't—I don't think you should punish yourself.

But at that moment in time you were." (TR2: 22)

3. Where a person is unconscious or otherwise incapable of refusing to submit to a chemical test to determine the alcohol concentration, that person is deemed *not* to have withdrawn their implied consent and the test may be administered pursuant to procedures set forth by statute. 47 O.S.2004 § 751(D). *See also, State v. Wood*, 1978 OK CR 25, ¶ 9, 576 P.2d 1181, 1183, citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

2004 § 753; *Smith v. State ex. rel., Dept. of Public Safety*, 1984 OK 16, 680 P.2d 365, 368. The refusal does not have to be express; anything less than an unqualified consent by the licensee to the requested test constitutes a refusal. *See Robertson v. State of Oklahoma, ex rel. Dep't. of Public Safety*, 1972 OK 126, ¶ 22, 501 P.2d 1099, 1104; *Hollis v. Dept. of Public Safety*, 2006 OK CIV APP at ¶ 8, 131 P.3d at 147. In *Hollis I*, COCA found that a motorist's silence can be construed as a refusal to test, reasoning that to allow "a licensee to simply stand mute and refuse to answer would effectively nullify the implied consent law." *Hollis v. State ex rel. Department of Public Safety*, 2006 OK CIV APP at ¶ 8, 131 P.3d at 147. We agree.

¶ 10 In *Hollis I*, COCA found that DPS met its burden of proof in revoking Hollis'. license. *Hollis v. State ex rel. Department of Public Safety*, 2006 OK CIV APP at ¶ 9, 131 P.3d at 147. COCA rejected Hollis' argument that DPS must further prove that he had the capacity to consent to the test as part of its prima facie case. "If licensees who are fully conscious, with no obvious physical or mental impairments, as was the case with Hollis, believe they were incapable of refusing to submit to the tests, the burden of proof is theirs." *Hollis v. State ex rel. Department of Public Safety*,

2006 OK CIV APP at ¶ 11, 131 P.3d at 148. After remand, the trial court found that Hollis met his burden of proof that, because of his emotional distress, he did not have the mental capacity to refuse a blood alcohol test. As Hollis was clearly conscious throughout the arrest and booking process, we must determine if sufficient evidence was presented to show that he was otherwise incapable of refusing to submit to the test.[4] 47 O.S. 2004 § 751(D).

¶ 11 No Oklahoma case has addressed whether emotional distress can be a basis for incapacity to refuse a chemical test under the implied consent statute. In fact, only a handful of other jurisdictions have addressed the issue, with varying results.[5] Generally, courts are reluctant to excuse drivers who refuse chemical testing on the grounds of mental incapacity when those drivers have the capacity to imbibe or ingest a chemical substance and choose to drive a car.[6] Regardless, all courts that have permitted a licensee to plead incapacity as a result of extreme emotional distress have required medical evidence documenting the mental incapacity.[7]

¶ 12 While there are a few Oklahoma cases addressing incapacity to refuse, none of those cases involve emotional distress as the basis for the incapacity. Nevertheless, Oklahoma

---

**4.** Unless the lower court's rulings are found to be erroneous as a matter of law, or unsupported by evidentiary foundation, the appellate courts will not disturb the findings made. *Smith v. State ex rel. Dept. of Public Safety*, 1984 OK 16, 680 P.2d 365, 368.

**5.** *See State v. Superior Court of Pima County*, 155 Ariz. 403, 747 P.2d 564 (Ct.App.Div.2 1998) (medical testimony that driver suffered from severe emotional disturbance at the time of her refusal of chemical testing may support the finding that the driver was unable to make a knowing refusal of chemical testing); *Com., Dept. of Transp., Bureau of Driver Licensing v. Zeltins*, 150 Pa. Cmwlth. 44, 614 A.2d 349 (1992) (finding of incapacity upheld where supported by evidence from three expert medical witnesses). *But see In re Matherly*, 177 W.Va. 507, 354 S.E.2d 603 (1987) (extreme emotional distress may not be raised as a defense in an administrative proceeding to revoke a license for refusal of chemical testing); *Bell v. Com., Dept. of Transp.*, 147 Pa. Cmwlth. 157, 607 A.2d 304 (1992) (Despite fact that driver was crying and nervous, competent medical evidence is necessary to prove an inability to make a knowing and conscious refusal); *Lee v. Schwendiman*, 722 P.2d 766 (Utah 1986) (driv-

er's uncontrollable crying and lack of cooperation in performing chemical test is insufficient, without further evidence, to show that her emotional condition rendered her incapable of knowingly refusing test).

**6.** In *In re Matherly*, 177 W.Va. 507, 354 S.E.2d 603 (1987), the West Virginia Supreme Court recognized that a "driver's raising of the 'too upset to understand' defense is tantamount to a claim that, while he was so emotionally upset that he could not intelligently respond to an officer's request to submit to a test, he took it upon himself to endanger the lives and limbs of the rest of us by driving a car."

**7.** "Medical evidence is almost as crucial a factor in the outcome of refusal cases as whether the state's laws allow the court to consider mental capacity. Expert medical testimony and medical records demonstrating and explaining the driver's mental incapacity at the time of the arrest and the way in which the specific incapacity prevented the refusal from being knowing and intelligent was presented in almost every case leading to a finding of incapacity justifying the driver's refusal of chemical testing. In most

case law does reflect the importance of medical testimony in cases where the licensee pleads incapacity to refuse. In *Department of Public Safety v. Krahn,* 1977 OK 168, ¶ 12, 569 P.2d 982, 984, this Court affirmed the trial court's ruling that a motorist suffering from a concussion as a result of a fall earlier that evening, who was semiconscious at the time she refused to submit to the chemical test, did not knowingly refuse to submit to such a test. The Court specifically noted that there was uncontradicted expert medical testimony to show that the licensee probably had loss of memory, due to her state of semi-consciousness after her fall, at the time of her refusal.

¶ 13 Likewise, in *McKeever v. State ex rel. Dept. of Public Safety,* 2001 OK CIV APP 79, 25 P.3d 301, COCA upheld the revocation of the appellee's license despite his claim that, at the time his blood was taken, he was unconscious or in a state of shock due to injuries sustained in the car accident that led to his arrest. The court noted that the evidence, which was corroborated by medical testimony, indicated that the motorist was alert and conscious while the officer was talking to him, that he answered all his questions, and that he was capable of giving consent.

¶ 14 Several Oklahoma criminal cases have also held expert medical testimony is generally necessary to prove the defendant was incapable of giving consent. *See, e.g., Lorenz v. State,* 1965 OK CR 111, ¶ 8, 406 P.2d 278, 280–281 (uncontroverted medical testimony showed defendant was unconscious and incapable of giving consent); *Watts v. State,* 1979 OK CR 117, ¶ 10, 602 P.2d 229, 231 (defendant presented no medical testimony to show his injury of a lacerated tongue, which placed him in the hospital and in great pain, prevented him from giving consent); *Marr v. State,* 1987 OK CR 173, ¶ 35, 741 P.2d 884, 885 (defendant failed to present expert medical testimony regarding his inability to consent).

¶ 15 At trial after remand, Hollis presented no medical evidence to support his alleged mental incapacity due to emotional distress. Instead, Hollis relied on his own representation of his emotional condition to show an alleged incapacity. The trial court's finding that Hollis lacked the mental capacity to give a conscious refusal to the chemical test request is unsupported by any medical evidence. That Hollis was emotional and crying throughout the arrest process does not distinguish him from countless arrestees no doubt upset with their circumstances. If Hollis was truly incapable of providing a knowing refusal as a result of a medical incapacity due to emotional distress, it is his burden to document the incapacity with credible medical testimony. Self-serving statements provided at trial will not suffice.

¶ 16 We cannot countenance a defense that, unsupported by any medical evidence, would offer an intoxicated driver, experiencing an emotional event in his life, immunity from this State's implied consent laws. Motorists cannot be allowed to use an emotional distress claim without supporting medical testimony in defending a license revocation when there is no obvious medical infirmity.[8] Because Hollis failed to provide sufficient credible evidence that he was mentally incapable of giving a knowing and conscious refusal, the decision of the district court is reversed and remanded to affirm the revocation of Hollis' driving privileges.

**JUDGMENT OF THE DISTRICT COURT REVERSED AND REMANDED.**

CONCUR: WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, KAUGER, WATT, TAYLOR, COLBERT, REIF, JJ.

CONCUR IN PART; DISSENT IN PART: OPALA, J.

---

cases, the Court found the evidence inadequate to support a finding of incapacity, or the court found that alcohol played at least a minimal causal role in the driver's incapacity." *Mental Incapacity as Justifying Refusal to Submit to Tests for Driving While Intoxicated,* 76 A.L.R.5th 597 § 2(b)(2000).

**8.** We do not decide here today that expert medical testimony must be presented in all cases in order to satisfy the licensee's burden. Indeed, whether such testimony is necessary is a matter to be determined by the facts of a particular case.