2015 OK CIV APP 54

**JOSE V. LEMUS, Plaintiff/Appellee,**

v.

**STATE of Oklahoma, ex rel. DEPART-MENT OF PUBLIC SAFETY, Defendant/Appellant.**

No. 112,008.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 19, 2014.

Rehearing Denied Oct. 23, 2014.

Certiorari Denied May 11, 2015.

Jessica L. Schumacher, Stephen G. Fabian, Jr., Michael O'Brien, Oklahoma City, OK, for Plaintiff/Appellee.

Mark E. Bright, Assistant General Counsel, Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.

ROBERT D. BELL, PRESIDING JUDGE.

¶ 1 Defendant/Appellant, the State of Oklahoma *ex rel.* Department of Public Safety (DPS), appeals from the trial court's judgment overturning the drivers license revocation of Plaintiff/Appellee, Jose V. Lemus. At issue is whether a DUI arrestee must be given the Implied Consent Advisory, 47 O.S. 2011 § 754(F)(2), in any language other than English before his or her refusal to take a blood-alcohol test may serve as the basis for a drivers license revocation. We answer this question in the negative. Consequently, we reverse the trial court's judgment.

¶ 2 On April 16, 2012, at 1:04 a.m., Del City Police Officer Kenneth Rogers arrested Lemus for suspicion of driving under the influence of an intoxicating substance. Lemus, an El Salvadoran immigrant who had been living in the United States for eleven (11) years, first obtained a drivers license in Florida. He later obtained an Oklahoma drivers license by simply filling out, with the aid of an interpreter, a change of address form. Lemus is fluent in Spanish, but speaks limited English.

¶ 3 Because Officer Rogers was having a difficult time communicating with Lemus, he contacted fellow Del City Officer Liz Whittington for assistance. Officer Whittington, who has limited Spanish speaking ability, arrived at the scene and attempted but failed to read the Implied Consent Advisory to Lemus in Spanish. She then tried unsuccessfully to contact a Spanish speaking officer from both the Oklahoma City and Midwest City police departments. Officer Whittington then read the advisory to Lemus in English. Lemus later conceded he understood the officers asked him to take a test, he agreed to take the test, and he was supposed to blow into the machine.

¶ 4 Lemus was administered the breath test three times. The first test showed Lemus' blood-alcohol level was 0.10. The machine did not produce a reading for either the

second or third tests. According to Officer Whittington, Lemus obstructed the testing by placing his tongue over the breath tube. Equating Lemus' actions as a refusal to take the test, Whittington filled out and served Lemus with an Affidavit and Notice of Revocation/Disqualification.

¶ 5 At the conclusion of an administrative hearing held on October 9, 2012, DPS issued an order revoking Lemus' driving privileges for one hundred eighty (180) days. *See* 47 O.S.2011 § 753 (mandatory revocation for DUI arrestee who refuses to submit to intoxicant testing). Lemus then appealed the decision to the district court, which conducted a trial *de novo*. Following trial and briefing, the trial court issued a lengthy order reversing the revocation. Although the trial court found Lemus "deliberately fail[ed] to perform the breath-alcohol test by not blowing directly into the mouthpiece," the court concluded equal protection jurisprudence demanded Lemus be given the Implied Consent Advisory in his native Spanish. From said ruling, DPS appeals.

¶ 6 This case presents a question of law. "Questions of law are reviewed by a *de novo* standard." *Bank of the Wichitas v. Ledford,* 2006 OK 73, 20, 151 P.3d 103. "When reexamining a trial court's legal rulings, an appellate court exercises plenary, independent and non-deferential authority." *Villines v. Szczepanski,* 2005 OK 63, 8, 122 P.3d 466.

■ ¶ 7 In *Hollis v. State ex rel. Dept. of Pub. Safety,* 2008 OK 31, 183 P.3d 996, the Supreme Court reiterated:

> In order to revoke a license based on refusal to submit to a breath or blood test [pursuant to 47 O.S. § 753], DPS must prove, by a preponderance of the evidence: (1) that the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehi-

cle upon the public roads while under the influence of alcohol and/or other intoxicating substance; (2) the person was placed under arrest; (3) the person refused to submit to the chemical test; and (4) the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test.

*Id.* at 9. Section 754(F)(2) states in relevant part that where a drivers license has been revoked or denied "based upon the refusal of the person to submit to a breath or blood test," the scope of the DPS hearing shall include whether:

> a. the person refused to submit to the test or tests, and
>
> b. the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test or tests.

In setting aside Lemus' revocation, the trial court focused on the word "informed" in subsection 754(F)(2)(b) and concluded: "Since Oklahoma issued a driver's license to [Lemus], despite [his] inability to understand English, then Oklahoma must assure such person that notices required by law must be given in the language [Lemus] understands."

■ ¶ 8 We begin our analysis, as did the trial court, by recognizing that Article XXX, § 1 of the Oklahoma Constitution mandates "all official actions of the state shall be conducted in the English language, except as required by federal law."[1] Clearly, the officers in this case were taking official state action when they arrested Lemus and attempted to test his blood-alcohol level. The question before us, therefore, is whether federal law requires Oklahoma's Implied Consent Advisory be given in any language other than English. For the reasons set forth below, we hold it does not.

1.  Okla. Const. art. XXX, § 1, which was adopted by state-wide vote on November 2, 2010, states in full:

    As English is the common and unifying language of the State of Oklahoma, all official actions of the state shall be conducted in the English language, except as required by federal law. No person shall have a cause of action against an agency or political subdivision of this state for failure to provide any official

government actions in any language other than English. Nothing in this Article shall be construed to diminish or impair the use, study, development, or encouragement of any Native American language in any context or for any purpose. The Legislature shall have the power to implement, enforce and determine the proper application of this Article by appropriate legislation.

¶ 9 Oklahoma, like every other state in the Union, has an implied consent law. "Under this scheme, when a driver turns his vehicle onto a public road, the driver has automatically consented to being tested for intoxicants by blood or breath." Cheryl F. Hiemstra, *Keeping DUI Implied Consent Laws Implied,* 48 WILLAMETTE L. REV. 521, 522 (2012). Oklahoma's implied consent law is set forth at 47 O.S.2011 § 751 *et seq.* Specifically, § 751(A)(1) states in relevant part:

Any person who operates a motor vehicle upon the public roads ... within this state shall be deemed to have given consent to a test or tests of such person's blood or breath, for the purpose of determining the alcohol concentration as defined in Section 756 of this title, and such person's blood, saliva or urine for determining the presence or concentration of any other intoxicating substance ..., if arrested for any offense arising out of acts alleged to have been committed while the person was operating or in actual physical control of a motor vehicle upon the public roads ... while under the influence of alcohol or other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance....

¶ 10 In *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), the United States Supreme Court held a state statutory scheme similar to Oklahoma's implied consent law did not, on its face, violate due process. The Court later reiterated that revoking the drivers license of a DUI arrestee who refuses to take a blood-alcohol test "is unquestionably legitimate, assuming appropriate procedural protections." *South Dakota v. Neville,* 459 U.S. 553, 560, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983). The Oklahoma Supreme Court has specifically determined Oklahoma's Implied Consent Law does not violate the due process provisions of the United States Constitution. *Robertson v. State ex rel. Lester,* 1972 OK 126, 7–12, 501 P.2d 1099. Although the United States Supreme Court has not addressed whether due process requires that an arrested driver be

advised of the consequences of refusing to consent to blood-alcohol testing (nor whether equal protection requires the arrestee comprehend any such advisory), the *Neville* Court held it was not "fundamentally unfair for [a state] to use the refusal to take the test as evidence of guilt, even though [the driver] was not specifically warned that his refusal could be used against him at trial." *Neville,* 459 U.S. at 565, 103 S.Ct. at 923 (addressing self-incrimination concerns).

¶ 11 Like Oklahoma, most states have enacted statutes "requiring law enforcement officers advise suspects of their 'rights and consequences' regarding the blood or breathalyzer test" and provide for various consequences for refusing to take the test. Hiemstra, 48 WILLAMETTE L. REV. at 524–5. As previously set forth, Oklahoma's Implied Consent Advisory mandates a DUI arrestee be "informed" that his or her driving privileges will be revoked if he or she refuses to take a blood-alcohol test. The exact statutory language of each of the other states' "rights and consequences" advisement provisions vary. *Id.* at 525. Such a procedure safeguards against potential "violent confrontations" where police officers "administer a blood-alcohol test against the suspect's will." *Neville,* 459 U.S. at 559, 103 S.Ct. at 920. Title 47 O.S.2011 § 753 contains Oklahoma's prohibition against forced blood-alcohol testing of a conscious DUI arrestee absent special circumstances.[2]

¶ 12 According to Hiemstra, there have emerged three approaches to determining whether DUI arrestees have a legally enforceable claim to comprehend the "rights and consequences" advisement:

The first ... requires suspects to fully comprehend the advisement. The second ... requires law enforcement to reasonably accommodate suspects' comprehension. The third ... requires law enforcement to recite the advisement, but the suspect need not comprehend.

---

2. Section 753 permits the forced blood-alcohol testing of a conscious DUI arrestee "where the investigating officer has probable cause to believe that the person under arrest, while intoxi-

cated, has operated the motor vehicle in such a manner as to have caused the death or serious physical injury of any other person or persons."

Hiemstra, 48 WILLAMETTE L. REV. at 525. Hiemstra concludes, and for the reasons stated hereafter we agree, "the third approach is the most logical in light of the policy underlying implied consent law." *Id.*

¶ 13 We reiterate:

The operation of a motor vehicle on a public highway is not a natural, absolute right, but a conditional privilege which may be granted, suspended, or revoked under the police power of the state. A driver's license is not a contract or a property right in the constitutional sense, ... The privilege is granted to those who are qualified, who comply with reasonable police power requirements in the interest of public safety and welfare, and is withheld from those who do not.

*Robertson,* 1972 OK 126 at 9, 501 P.2d 1099.

¶ 14 The State of Oregon's implied consent statutes are similar to Oklahoma's. In particular, Oregon Revised Statutes (Or.Rev. Stat.) § 813.100(1) mandates, "Before the [blood-alcohol] test is administered the person requested to take the test shall be informed of consequences and rights" of refusal as set forth in Or.Rev.Stat. § 813.130. In analyzing this provision, an early Oregon Supreme Court opinion held:

While the statute recognizes that a person may refuse to submit to the test, the legislature could hardly have contemplated that it was necessary that there be a completely knowing and understanding submission. If this were the case, the only people who could be tested would be those who were not sufficiently intoxicated to interfere with their mental processes.

*State v. Fogle,* 254 Or. 268, 459 P.2d 873, 874 (1969). In *State v. Nguyen,* 107 Or.App. 716, 813 P.2d 569, 570-1 (1991), the Oregon Court of Appeals held, "Although the statute requires that a person under arrest for driving under the influence of intoxicants be 'informed' of the consequences and rights described in ORS 813.130, it does not require that the information be understood."

¶ 15 More recently, in *State v. Cabanilla,* 351 Or. 622, 273 P.3d 125 (2012), the Oregon Supreme Court detailed, in a case substantially similar to the instant appeal, that the use of the word "informed" in § 813.100(1) does not require the state to prove DUI arrestees with limited English-speaking skills understand the "consequences and rights" advisement. In *Cabanilla,* the defendant was a native Spanish speaker with weak English language skills. *Cabanilla,* 273 P.3d at 126. He was arrested after law enforcement officials discovered him in a wrecked vehicle, smelling of alcohol with bloodshot, glassy eyes. *Id.* at 127. Notwithstanding the existence of a language barrier, the officers were able, through a few Spanish words and hand gestures, to have the defendant perform various field sobriety tests. *Id.*

¶ 16 After being transported to the police station, an officer read the defendant the Oregon implied consent advisory in English and asked him whether he would take a breath test. Following some discussion, the officer came to believe the defendant understood he was being asked to submit to a breath test. According to the officer, the defendant then stated, in substance, that he did not want to take the test. *Id.* The defendant later moved to suppress the evidence of his refusal to take the test on the ground that, due to his inability to speak English, he was not "informed" of the consequences of refusal within the meaning of § 813.130. *Cabanilla,* 273 P.3d at 128.

¶ 17 The *Cabanilla* Court first commented:

Defendant may be correct that the common understanding and dictionary definition of the word "inform" is, generally, to impart information. However, it is not necessary for us to resolve the parties' dispute about the meaning of that term, because even if the term means what defendant contends, a failure to "inform" a driver in that sense does not result in the exclusion of evidence of his refusal to take the breath test.

*Cabanilla,* 273 P.3d at 131.

¶ 18 After discussing the intent of the advisement statute and the inference of guilt that arises from a test refusal, the *Cabanilla* Court held:

More importantly, under the [implied consent] law, a driver *already has consented to the test.* The driver cannot legally refuse. As this court has stated, the pur-

pose of the reference to "refusal" in the implied consent statutes "is not to reinstate a driver's right to choice, let alone a voluntary and informed choice, but rather to nonforcibly enforce the driver's previous implied consent." Thus, when a driver is asked to take a breath test, his or her only decision is whether to physically refuse. That is, "[t]he very concept of implied consent ... was intended to eliminate the right of choice and to recognize actual choice *only* in the sense of a forbearance of physical resistance." The driver may choose to physically refuse, and the state will not force the driver to do what he or she is legally obligated to do. However, because the driver has only the physical ability, but not the legal right, to refuse, the legal validity of the driver's refusal does not depend on whether his or her decision to physically refuse is fully informed or voluntary.

As is evident from the foregoing, the overarching purpose of the rights and consequences requirement is to coerce a driver's submission to take the tests; it is not to inform the driver of the specifics of the law. As this court stated in [*State v.*] *Spencer* [, 305 Or. 59, 750 P.2d 147 (Or. 1988) ],

"The history and development of the implied consent law ... suggest that the advice to be given an arrestee was intended to provide an additional incentive, short of physical compulsion, to induce submission."

Thus, whether a driver makes a knowing and voluntary choice to refuse is of little or no consequence. "[T]he [implied consent] statute's references to a driver's 'refusal' do not evince a legislative concern that the driver make a voluntary and fully informed decision whether to submit to the test." *Cabanilla*, 273 P.3d at 131–2 (emphasis in original, citations and footnote omitted).

¶ 19 The *Cabanilla* Court concluded the mandate of the Oregon advisement statute is satisfied where "the arresting officer complied with the requirement to read the driver the rights and consequences substantially as set out in [§]813.30." *Id.* at 133. "The officer need not make a separate determination

whether the driver understood those rights and consequences." *Id.*

¶ 20 We find *Cabanilla* persuasive and hereby adopt its rationale. In the present case, Lemus consented, as a matter of law, to intoxicant testing when he chose to drive on Oklahoma's roadways. Our Implied Consent Advisory does not provide drivers arrested for DUI with the *legal* right to refuse such testing. Rather, the Advisory only authorizes DUI arrestees to *physically* refuse to submit to testing. We also believe Oklahoma's Advisory, like Oregon's, "was intended to provide an additional incentive, short of physical compulsion, to induce submission" and it was "not [intended] to inform the driver of the specifics of the law." *Id.* at 132.

¶ 21 The above conclusion is also supported by 47 O.S.2011 § 751(D), which states in relevant part:

Any person who is unconscious or otherwise incapable of refusing to submit to a test of such person's blood or breath to determine the alcohol [or other intoxicant] concentration thereof ..., shall be deemed not to have withdrawn the consent provided by subsection A of this section, and such test may be administered as provided herein.

This provision helps demonstrate that the Implied Consent Advisory was designed primarily as an incentive to submit to testing, not to inform of the specifics of the law. Reciting the Advisory to an unconscious driver is akin to reciting the Advisory in English to a driver who speaks none. However, both drivers are deemed to have consented by law to submit to intoxicant testing when they elect to operate a motor vehicle on an Oklahoma roadway.

¶ 22 The above discussion also vitiates the trial court's equal protection analysis. "The Equal Protection Clause of the Fourteenth Amendment mandates that no state 'deny to any person within its jurisdiction the equal protection of the laws.'" *Gladstone v. Bartlesville Indep. Sch. Dist. No. 30*, 2003 OK 30, 9, 66 P.3d 442. "[I]t is intended to safeguard the quality of governmental treatment against arbitrary discrimination." *Id.* In the present case, Lemus' language barrier does

not implicate equal protection considerations because the legal validity of his refusal did not depend on whether his decision to physically refuse was fully informed. *See Cabanilla,* 273 P.3d at 132. Regardless of their language, *every* driver on an Oklahoma road has, by law, implicitly consented to intoxicant testing.

¶ 23 We also find that *Hollis v. State ex rel. Dept. of Pub. Safety,* 2008 OK 31, 131 P.3d 145, on which the trial court relied, distinguishable. *Hollis* addressed a licensee's incapacity to refuse intoxicant testing, due to alleged emotional distress, under § 751(D). The inability of a driver to speak or understand English is not comparable to one incapacitated for medical or emotional reasons. As DPS correctly asserts, non-English speaking licensees voluntarily drive on Oklahoma roadways fully aware of their language handicap.

¶ 24 The Oklahoma Constitution mandates all official state actions be conducted in English, except as required by federal law. We find no federal law requiring that Oklahoma's Implied Consent Advisory be given in any language other than English. Furthermore, in light of the fact every driver on an Oklahoma roadway has already consented to intoxicant testing, we hold DUI arrestees have no legally enforceable right to comprehend the Implied Consent Advisory.

> We recognize that, in this digital age, it may be a simple matter for police departments to have computers programmed with prerecorded translations of the implied consent advice in almost any language police officers might encounter in a given jurisdiction. However, this case is about what the statutes require, and not what this court thinks is advisable or convenient for police departments to do.

*Cabanilla,* 273 P.3d at 133, n. 12.

¶ 25 The judgment of the trial court is reversed.

¶ 26 REVERSED.

MITCHELL, J., and GOREE, J., concur.