OSCN Found Document:LEMUS v. STATE ex rel. DEPT. OF PUBLIC SAFETY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 LEMUS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
2015 OK CIV APP 54
352 P.3d 46
Case Number: 112008
Decided: 09/19/2014
Mandate Issued: 05/28/2015
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2015 OK CIV APP 54, 352 P.3d 46

 

JOSE V. LEMUS, Plaintiff/Appellee,
v.
STATE OF OKLAHOMA, 
ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, 
OKLAHOMA
HONORABLE GEARY L. WALKE, JUDGE

REVERSED

Jessica L. Schumacher, Stephen G. Fabian, Jr., Michael O'Brien, Oklahoma 
City, Oklahoma, for Plaintiff/Appellee,
Mark E. Bright, Assistant General 
Counsel, DEPARTMENT OF PUBLIC SAFETY, Oklahoma City, Oklahoma, for 
Defendant/Appellant.


ROBERT D. BELL, PRESIDING JUDGE:

¶1 Defendant/Appellant, the State of Oklahoma ex rel. Department of 
Public Safety (DPS), appeals from the trial court's judgment overturning the 
drivers license revocation of Plaintiff/Appellee, Jose V. Lemus. At issue is 
whether a DUI arrestee must be given the Implied Consent Advisory, 47 O.S. 2011 §754(F)(2), in any 
language other than English before his or her refusal to take a blood-alcohol 
test may serve as the basis for a drivers license revocation. We answer this 
question in the negative. Consequently, we reverse the trial court's 
judgment.
¶2 On April 16, 2012, at 1:04 a.m., Del City Police Officer Kenneth Rogers 
arrested Lemus for suspicion of driving under the influence of an intoxicating 
substance. Lemus, an El Salvadoran immigrant who had been living in the United 
States for eleven (11) years, first obtained a drivers license in Florida. He 
later obtained an Oklahoma drivers license by simply filling out, with the aid 
of an interpreter, a change of address form. Lemus is fluent in Spanish, but 
speaks limited English.
¶3 Because Officer Rogers was having a difficult time communicating with 
Lemus, he contacted fellow Del City Officer Liz Whittington for assistance. 
Officer Whittington, who has limited Spanish speaking ability, arrived at the 
scene and attempted but failed to read the Implied Consent Advisory to Lemus in 
Spanish. She then tried unsuccessfully to contact a Spanish speaking officer 
from both the Oklahoma City and Midwest City police departments. Officer 
Whittington then read the advisory to Lemus in English. Lemus later conceded he 
understood the officers asked him to take a test, he agreed to take the test, 
and he was supposed to blow into the machine.
¶4 Lemus was administered the breath test three times. The first test showed 
Lemus' blood-alcohol level was 0.10. The machine did not produce a reading for 
either the second or third tests. According to Officer Whittington, Lemus 
obstructed the testing by placing his tongue over the breath tube. Equating 
Lemus' actions as a refusal to take the test, Whittington filled out and served 
Lemus with an Affidavit and Notice of Revocation/Disqualification.
¶5 At the conclusion of an administrative hearing held on October 9, 2012, 
DPS issued an order revoking Lemus' driving privileges for one hundred eighty 
(180) days. See 47 O.S. 2011 
§753 (mandatory revocation for DUI arrestee who refuses to submit to 
intoxicant testing). Lemus then appealed the decision to the district court, 
which conducted a trial de novo. Following trial and briefing, the trial 
court issued a lengthy order reversing the revocation. Although the trial court 
found Lemus "deliberately fail[ed] to perform the breath-alcohol test by not 
blowing directly into the mouthpiece," the court concluded equal protection 
jurisprudence demanded Lemus be given the Implied Consent Advisory in his native 
Spanish. From said ruling, DPS appeals.
¶6 This case presents a question of law. "Questions of law are reviewed by a 
de novo standard." Bank of the Wichitas v. Ledford, 2006 OK 73, ¶20, 151 P.3d 103. "When reexamining a 
trial court's legal rulings, an appellate court exercises plenary, independent 
and non-deferential authority." Villines v. Szczepanski, 2005 OK 63, ¶8, 122 P.3d 466.
¶7 In Hollis v. State ex rel. Dept. of Pub. Safety, 2008 OK 31, 183 P.3d 996, the Supreme Court 
reiterated:

 
 In order to revoke a license based on refusal to submit to a breath or 
 blood test [pursuant to 47 O.S. 
 §753], DPS must prove, by a preponderance of the evidence: (1) that the 
 officer had reasonable grounds to believe the person had been operating or 
 was in actual physical control of a vehicle upon the public roads while 
 under the influence of alcohol and/or other intoxicating substance; (2) the 
 person was placed under arrest; (3) the person refused to submit to the 
 chemical test; and (4) the person was informed that driving privileges would 
 be revoked or denied if the person refused to submit to the 
 test.
Id. at ¶9. Section 754(F)(2) states in relevant part that where a 
drivers license has been revoked or denied "based upon the refusal of the person 
to submit to a breath or blood test," the scope of the DPS hearing shall include 
whether:

 
 a. the person refused to submit to the test or tests, and
 b. the person was informed that driving privileges would be revoked or 
 denied if the person refused to submit to the test or 
tests.
In setting aside Lemus' revocation, the trial court focused on the word 
"informed" in subsection 754(F)(2)(b) and concluded: "Since Oklahoma issued a 
driver's license to [Lemus], despite [his] inability to understand English, then 
Oklahoma must assure such person that notices required by law must be given in 
the language [Lemus] understands."
¶8 We begin our analysis, as did the trial court, by recognizing that Article 
XXX, §1 of the Oklahoma Constitution mandates "all official actions of the state 
shall be conducted in the English language, except as required by federal 
law."[1] 
Clearly, the officers in this case were taking official state action when they 
arrested Lemus and attempted to test his blood-alcohol level. The question 
before us, therefore, is whether federal law requires Oklahoma's Implied Consent 
Advisory be given in any language other than English. For the reasons set forth 
below, we hold it does not.
¶9 Oklahoma, like every other state in the Union, has an implied consent law. 
"Under this scheme, when a driver turns his vehicle onto a public road, the 
driver has automatically consented to being tested for intoxicants by blood or 
breath." Cheryl F. Hiemstra, Keeping DUI Implied Consent Laws Implied, 48 
Willamette L. Rev. 521, 522 (2012). Oklahoma's implied consent law is set forth 
at 47 O.S. 2011 §751 et 
seq. Specifically, §751(A)(1) states in relevant part:

 
 Any person who operates a motor vehicle upon the public roads . . . 
 within this state shall be deemed to have given consent to a test or tests 
 of such person's blood or breath, for the purpose of determining the alcohol 
 concentration as defined in Section 756 of this title, and such person's 
 blood, saliva or urine for determining the presence or concentration of any 
 other intoxicating substance . . . , if arrested for any offense arising out 
 of acts alleged to have been committed while the person was operating or in 
 actual physical control of a motor vehicle upon the public roads . . . while 
 under the influence of alcohol or other intoxicating substance, or the 
 combined influence of alcohol and any other intoxicating substance . . . 
 .
¶10 In Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 
(1979), the United States Supreme Court held a state statutory scheme similar to 
Oklahoma's implied consent law did not, on its face, violate due process. The 
Court later reiterated that revoking the drivers license of a DUI arrestee who 
refuses to take a blood-alcohol test "is unquestionably legitimate, assuming 
appropriate procedural protections." South Dakota v. Neville, 459 U.S. 
553, 560, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983). The Oklahoma Supreme Court 
has specifically determined Oklahoma's Implied Consent Law does not violate the 
due process provisions of the United States Constitution. Robertson v. State 
ex rel. Lester, 1972 OK 126, 
¶¶7-12, 501 P.2d 1099. Although 
the United States Supreme Court has not addressed whether due process requires 
that an arrested driver be advised of the consequences of refusing to consent to 
blood-alcohol testing (nor whether equal protection requires the arrestee 
comprehend any such advisory), the Neville Court held it was not 
"fundamentally unfair for [a state] to use the refusal to take the test as 
evidence of guilt, even though [the driver] was not specifically warned that his 
refusal could be used against him at trial." Neville, 459 U.S. at 565, 
103 S.Ct. at 923 (addressing self-incrimination concerns).
¶11 Like Oklahoma, most states have enacted statutes "requiring law 
enforcement officers advise suspects of their 'rights and consequences' 
regarding the blood or breathalyzer test" and provide for various consequences 
for refusing to take the test. Hiemstra, 48 Willamette L. Rev. at 524-5. As 
previously set forth, Oklahoma's Implied Consent Advisory mandates a DUI 
arrestee be "informed" that his or her driving privileges will be revoked if he 
or she refuses to take a blood-alcohol test. The exact statutory language of 
each of the other states' "rights and consequences" advisement provisions vary. 
Id. at 525. Such a procedure safeguards against potential "violent 
confrontations" where police officers "administer a blood-alcohol test against 
the suspect's will." Neville, 459 U.S. at 559, 103 S.Ct. at 920. Title 47 O.S. 2011 §753 contains 
Oklahoma's prohibition against forced blood-alcohol testing of a conscious DUI 
arrestee absent special circumstances.[2]
¶12 According to Hiemstra, there have emerged three approaches to determining 
whether DUI arrestees have a legally enforceable claim to comprehend the "rights 
and consequences" advisement:

 
 The first . . . requires suspects to fully comprehend the advisement. The 
 second . . . requires law enforcement to reasonably accommodate suspects' 
 comprehension. The third . . . requires law enforcement to recite the 
 advisement, but the suspect need not comprehend.
Hiemstra, 48 Willamette L. Rev. at 525. Hiemstra concludes, and for the 
reasons stated hereafter we agree, "the third approach is the most logical in 
light of the policy underlying implied consent law." Id.
¶13 We reiterate:

 
 The operation of a motor vehicle on a public highway is not a natural, 
 absolute right, but a conditional privilege which may be granted, suspended, 
 or revoked under the police power of the state. A driver's license is not a 
 contract or a property right in the constitutional sense, . . . The 
 privilege is granted to those who are qualified, who comply with reasonable 
 police power requirements in the interest of public safety and welfare, and 
 is withheld from those who do not.
Robertson, 1972 OK 126 
at ¶9.
¶14 The State of Oregon's implied consent statutes are similar to Oklahoma's. 
In particular, Oregon Revised Statutes (Or. Rev. Stat.) §813.100(1) mandates, 
"Before the [blood-alcohol] test is administered the person requested to take 
the test shall be informed of consequences and rights" of refusal as set forth 
in Or. Rev. Stat. §813.130. In analyzing this provision, an early Oregon Supreme 
Court opinion held:

 
 While the statute recognizes that a person may refuse to submit to the 
 test, the legislature could hardly have contemplated that it was necessary 
 that there be a completely knowing and understanding submission. If this 
 were the case, the only people who could be tested would be those who were 
 not sufficiently intoxicated to interfere with their mental 
 processes.
State v. Fogle, 459 P.2d 873, 874 (Or. 1969). In State v. 
Nguyen, 813 P.2d 569, 570-1 (Or. Ct. App. 1991), the Oregon Court of Appeals 
held, "Although the statute requires that a person under arrest for driving 
under the influence of intoxicants be 'informed' of the consequences and rights 
described in ORS 813.130, it does not require that the information be 
understood."
¶15 More recently, in State v. Cabanilla, 273 P.3d 125 (Or. 2012), the 
Oregon Supreme Court detailed, in a case substantially similar to the instant 
appeal, that the use of the word "informed" in §813.100(1) does not require the 
state to prove DUI arrestees with limited English-speaking skills understand the 
"consequences and rights" advisement. In Cabanilla, the defendant was a 
native Spanish speaker with weak English language skills. Cabanilla, 273 
P.3d at 126. He was arrested after law enforcement officials discovered him in a 
wrecked vehicle, smelling of alcohol with blodshot, glassy eyes. Id. at 
127. Notwithstanding the existence of a language barrier, the officers were 
able, through a few Spanish words and hand gestures, to have the defendant 
perform various field sobriety tests. Id.
¶16 After being transported to the police station, an officer read the 
defendant the Oregon implied consent advisory in English and asked him whether 
he would take a breath test. Following some discussion, the officer came to 
believe the defendant understood he was being asked to submit to a breath test. 
According to the officer, the defendant then stated, in substance, that he did 
not want to take the test. Id. The defendant later moved to suppress the 
evidence of his refusal to take the test on the ground that, due to his 
inability to speak English, he was not "informed" of the consequences of refusal 
within the meaning of §813.130. Cabanilla at 128.
¶17 The Cabanilla Court first commented:

 
 Defendant may be correct that the common understanding and dictionary 
 definition of the word "inform" is, generally, to impart information. 
 However, it is not necessary for us to resolve the parties' dispute about 
 the meaning of that term, because even if the term means what defendant 
 contends, a failure to "inform" a driver in that sense does not result in 
 the exclusion of evidence of his refusal to take the breath 
 test.
Cabanilla, 273 P.3d at 131.
¶18 After discussing the intent of the advisement statute and the inference 
of guilt that arises from a test refusal, the Cabanilla Court held:

 
 More importantly, under the [implied consent] law, a driver already 
 has consented to the test. The driver cannot legally refuse. As this 
 court has stated, the purpose of the reference to "refusal" in the implied 
 consent statutes "is not to reinstate a driver's right to choice, let alone 
 a voluntary and informed choice, but rather to nonforcibly enforce the 
 driver's previous implied consent." Thus, when a driver is asked to take a 
 breath test, his or her only decision is whether to physically refuse. That 
 is, "[t]he very concept of implied consent . . . was intended to eliminate 
 the right of choice and to recognize actual choice only in the sense 
 of a forbearance of physical resistance." The driver may choose to 
 physically refuse, and the state will not force the driver to do what he or 
 she is legally obligated to do. However, because the driver has only the 
 physical ability, but not the legal right, to refuse, the legal validity of 
 the driver's refusal does not depend on whether his or her decision to 
 physically refuse is fully informed or voluntary.
 As is evident from the foregoing, the overarching purpose of the rights 
 and consequences requirement is to coerce a driver's submission to take the 
 tests; it is not to inform the driver of the specifics of the law. As this 
 court stated in [State v.] Spencer[,750 P.2d 147 (Or. 
 1988)],
 
 
 "The history and development of the implied consent law . . . suggest 
 that the advice to be given an arrestee was intended to provide an 
 additional incentive, short of physical compulsion, to induce 
 submission."
 Thus, whether a driver makes a knowing and voluntary choice to refuse is 
 of little or no consequence. "[T]he [implied consent] statute's references 
 to a driver's 'refusal' do not evince a legislative concern that the driver 
 make a voluntary and fully informed decision whether to submit to the 
 test."
Cabanilla, 273 P.3d at 131-2 (emphasis in original, citations and 
footnote omitted).
¶19 The Cabanilla Court concluded the mandate of the Oregon advisement 
statute is satisfied where "the arresting officer complied with the requirement 
to read the driver the rights and consequences substantially as set out in 
[§]813.30." Id. at 133. "The officer need not make a separate 
determination whether the driver understood those rights and consequences." 
Id.
¶20 We find Cabanilla persuasive and hereby adopt its rationale. In 
the present case, Lemus consented, as a matter of law, to intoxicant testing 
when he chose to drive on Oklahoma's roadways. Our Implied Consent Advisory does 
not provide drivers arrested for DUI with the legal right to refuse such 
testing. Rather, the Advisory only authorizes DUI arrestees to physically 
refuse to submit to testing. We also believe Oklahoma's Advisory, like Oregon's, 
"was intended to provide an additional incentive, short of physical compulsion, 
to induce submission" and it was "not [intended] to inform the driver of the 
specifics of the law." Id. at 132.
¶21 The above conclusion is also supported by 47 O.S. 2011 §751(D), which states 
in relevant part:

 
 Any person who is unconscious or otherwise incapable of refusing to 
 submit to a test of such person's blood or breath to determine the alcohol 
 [or other intoxicant] concentration thereof . . ., shall be deemed not to 
 have withdrawn the consent provided by subsection A of this section, and 
 such test may be administered as provided herein.
This provision helps demonstrate that the Implied Consent Advisory was 
designed primarily as an incentive to submit to testing, not to inform of the 
specifics of the law. Reciting the Advisory to an unconscious driver is akin to 
reciting the Advisory in English to a driver who speaks none. However, both 
drivers are deemed to have consented by law to submit to intoxicant testing when 
they elect to operate a motor vehicle on an Oklahoma roadway.
¶22 The above discussion also vitiates the trial court's equal protection 
analysis. "The Equal Protection Clause of the Fourteenth Amendment mandates that 
no state 'deny to any person within its jurisdiction the equal protection of the 
laws.'" Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, 2003 OK 30, ¶9, 66 P.3d 442. "[I]t is intended to 
safeguard the quality of governmental treatment against arbitrary 
discrimination." Id. In the present case, Lemus' language barrier does 
not implicate equal protection considerations because the legal validity of his 
refusal did not depend on whether his decision to physically refuse was fully 
informed. See Cabanilla, 273 P.3d at 132. Regardless of their language, 
every driver on an Oklahoma road has, by law, implicitly consented to 
intoxicant testing.
¶23 We also find that Hollis v. State ex rel. Dept. of Pub. Safety, 2008 OK 31, 131 P.3d 145, on which the trial 
court relied, distinguishable. Hollis addressed a licensee's incapacity 
to refuse intoxicant testing, due to alleged emotional distress, under §751(D). 
The inability of a driver to speak or understand English is not comparable to 
one incapacitated for medical or emotional reasons. As DPS correctly asserts, 
non-English speaking licensees voluntarily drive on Oklahoma roadways fully 
aware of their language handicap.
¶24 The Oklahoma Constitution mandates all official state actions be 
conducted in English, except as required by federal law. We find no federal law 
requiring that Oklahoma's Implied Consent Advisory be given in any language 
other than English. Furthermore, in light of the fact every driver on an 
Oklahoma roadway has already consented to intoxicant testing, we hold DUI 
arrestees have no legally enforceable right to comprehend the Implied Consent 
Advisory.

 
 We recognize that, in this digital age, it may be a simple matter for 
 police departments to have computers programmed with prerecorded 
 translations of the implied consent advice in almost any language police 
 officers might encounter in a given jurisdiction. However, this case is 
 about what the statutes require, and not what this court thinks is advisable 
 or convenient for police departments to do.
Cabanilla, 273 P.3d at 133, n.12.

¶25 The judgment of the trial court is reversed.

¶26 REVERSED.

MITCHELL, J., and GOREE, J., concur.


FOOTNOTES

[1] Okla. 
Const. art. XXX, §1, which was adopted by state-wide vote on November 2, 2010, 
states in full:
As English is the common and unifying language of the State of Oklahoma, all 
official actions of the state shall be conducted in the English language, except 
as required by federal law. No person shall have a cause of action against an 
agency or political subdivision of this state for failure to provide any 
official government actions in any language other than English. Nothing in this 
Article shall be construed to diminish or impair the use, study, development, or 
encouragement of any Native American language in any context or for any purpose. 
The Legislature shall have the power to implement, enforce and determine the 
proper application of this Article by appropriate legislation.

[2] Section 
753 permits the forced blood-alcohol testing of a conscious DUI arrestee "where 
the investigating officer has probable cause to believe that the person under 
arrest, while intoxicated, has operated the motor vehicle in such a manner as to 
have caused the death or serious physical injury of any other person or 
persons."





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2006 OK CIV APP 25, 131 P.3d 145, HOLLIS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1972 OK 126, 501 P.2d 1099, ROBERTSON v. STATE EX REL. LESTER
Discussed at Length
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed
 2005 OK 63, 122 P.3d 466, IN THE MATTER OF THE ESTATE OF VILLINES
Discussed
 2006 OK 73, 151 P.3d 103, BANK OF THE WICHITAS v. LEDFORD
Discussed
 2008 OK 31, 183 P.3d 996, HOLLIS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed at Length
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 751, Implied Consent to Breath, Blood, or Other Test for Determining Concentration of Alcohol or Other Intoxicating Substance
Discussed
 47 O.S. 754, Surrender or Seizure of License - Receipt as Temporary License - Revocation or Denial of Driving Privilege - Hearing
Cited
 47 O.S. 753, Refusal to Submit to Test - Revocation of License - Reinstatement of License
Discussed at Length